| 9 | 461 |
|---|---|
| 128 | 229 |

---

JENNERS and Others *v.* DOE on the demise of POMEROY and Others.

By the law of this state as it existed when adopted by the Circuit Court of the *United States,* pursuant to the act of congress of *May* 19, 1828, marshal's sales of real estate must be made in the county where the real estate is situate:

There is no analogy between such sales and sinking-fund sales.

APPEAL from the *Tippecanoe* Circuit Court.

PERKINS, J.—Ejectment under the old practice. Recovery by the plaintiff.

The parties, respectively, claim title to the lands in dispute, from *David Webb*—the plaintiffs in error by virtue of a deed of trust, executed by *Webb* and one *Abraham Shoemaker* to the plaintiff, *William M. Jenners,* dated and acknowled *November* 5, 1838—the lessors of the defendant, as purchasers at a marshal's sale, made under and by authority of an execution issued from the *United States*

Circuit Court, for the district of *Indiana*, on a judgment rendered in that Court in their favor, against *Webb*, on *November* 19, 1838. When *Webb* executed the trust deed to *Jenners*, he was the owner in fee of the lands described in the declaration, and continued to be their owner until the sale thereof by the marshal, to the lessors of the defendant, unless the execution of the deed of trust had divested him of such title. Inasmuch as the deed of trust was executed before the judgment of the lessors of the defendant became a lien upon the lands in controversy, they cannot maintain their title thereto, as against the plaintiff, if the trust deed is valid, or the sale so made by the marshal to them is invalid.

Two propositions, therefore, are presented for discussion, in the following order:

1. Is the deed of trust, executed by *Webb* and *Shoemaker* to *Jenners*, void as between the parties, or as against the creditors of the former, who did not consent to it?

2. Is the deed executed to the lessors of the defendants, by the marshal, in pursuance of the sale by him made, a valid conveyance?

If the affirmative of the first, or the negative of the latter, proposition prevail, the judgment of the Circuit Court must be reversed.

1. Of the deed of trust. The deed is too long to quote entire, and a fair view of the question stated may be had from an examination of parts of it.

It recites that *Webb* and *Shoemaker* " are largely indebted to sundry persons, and whereas it is believed that their property would fall far short of satisfying those debts, if collections were sought to be enforced by the summary and usual process of law;  *   *   *   * whereas an advantage would arise to the creditors of *Webb* and *Shoemaker* by placing in the hands of a trustee for disposition, as well the property of said parties subject to execution, as choses in action not subject to execution, thereby enlarging the fund subject at law to the payment of those debts, and avoiding the sacrifice of a sheriff's sale, as well as a mutual advantage to said *Webb* and *Shoemaker*, from the

prospect of realizing a greater sum of money for their pro-
perty, and discharging a greater portion, and, as they hope,
all of their debts." Then follows the grant to *Jenners* and
his successors, after which the trust and powers are thus
declared:

"And it is hereby expressly declared and provided, that
the grant, bargain, sale, conveyance, transfer and assign-
ment hereby made is to be subject to the following trusts,
and accompanied with the following powers, that is to say:
the said trustee and his successors may from time to time,
by proper and apt instruments in writing, or other con-
tracts, bargain, sell, convey, transfer, assign and dispose of
all and singular the property and things hereby conveyed
to him as such trustee, to any person or persons for money
or other valuable article, to be afterwards by him converted
into money, or for securities for money, upon such time
and terms as he shall think most conducive to the interests
hereby intended to be promoted; provided, however, that
he shall not make sale of any part of the real estate hereby
conveyed, within the period of eighteen months from this
date, unless a fair price can within that time be obtained
therefor, and at any time when he shall make sale of any
part of the real estate, he shall not, in such contract of sale
give a longer credit than five years upon any part of the
purchase-money. He shall have power to rent, lease, and
hire the said real estate from time to time, but no lease-
hold term to exceed three years. He may allow the said
parties of the first part to continue in his name and for his
use as such trustee, in the distilling business, on that por-
tion of the premises now used for that purpose, and allow
them to enjoy such possession of said premises and per-
sonal property as may be necessary and convenient for
conducting such business, and the business of fattening
hogs or the like, which usually is connected with distilling,
allowing them such reasonable compensation for their ser-
vices as may be necessary for their comfortable sustenance,
but having at all times the control and ownership as such
trustee of said business and the property employed therein,

with the right to take immediate possession at any time when he shall think proper to do so."

The Court held the deed void upon its face, as a question of law. It is contended that the Court could not thus decide upon the character of an assignment—that it should, in all cases, refer the instrument to the jury, in connection with the facts.

Our statute enacts that every assignment, &c., made with intent to hinder, delay, or defraud creditors, shall be void; and further provides, that the question of fraudulent intent shall be a question for the jury. 1 R. S. pp. 302, 303, ss. 17, 21.

These provisions have declared, not changed, the law, as heretofore expounded by the Courts of this state.

When a written instrument is offered in evidence, it is first submitted to the Court. The Court decides upon its legal effect. That point being determined, it then goes to the jury, or is rejected, according to the decision upon its legal effect. For example, an assignment to a trustee, as in the present instance. It is first submitted to the Court, and if the Court determines that the legal effect of the instrument is to delay creditors, the instrument is rejected. There is no occasion to go into the question of intent; for that could not aid a void instrument. Intent will not control the plain legal effect of the terms of an instrument; and if that effect would be to delay creditors, any intent that the party might have had to the contrary would not help the matter. Suppose an assignment provided that the assignee should hold the property, and use, or permit the assignor, as his agent, to use, trade upon, and improve it, for ten years, in order so to increase its value that it would pay all the assignor's debts; and that the assignee should then sell it on credit for the best possible price, pay the debts, and return the overplus to the assignor; or suppose the terms of the instrument should be, that fifty cents on the dollar should, at the end of ten years, be paid to the creditors, and the property then be returned, so far as it remained unsold, in specie, to the assignor; would an intent of the assignor, however stoutly asserted and proved,

change the legal effect of such an instrument so that it would not operate to hinder, &c., creditors? Would it not, in express terms, violate the statute? Most certainly it would. But if the Court finds the legal effect of the instrument upon its face to conform to the law, it so far goes into the case, as valid; yet the creditors may still allege and prove that surrounding, extrinsic facts show that it was made with intent to defraud—as that the assignees are irresponsible, worthless men, the tools of the assignor, and in secret collusion with him, permitting him to remain in the possession and use of the property assigned, for his own private benefit, &c.—and all questions of this kind, showing a fraudulent intent in opposition to the fair legal effect of the instrument, are for the jury. Before the statute, it had been a question whether certain of these facts being proved—as that possession did not accompany the deed, &c.—the Court should not declare fraud *per se*. The statute enacts, in conformity to the conclusion at which the Courts of this state had arrived, that such facts shall go to the question of intent, and be for the jury. This is the plain reading of the statute. It does not thus refer the question of intent to delay, &c., as the legal effect of the instrument will disclose that to the Court; but the intent to defraud alone. See *Brigham* v. *Tillinghast*, 3 Kernan, 215; [*Nutter* v. *Harris*, this volume, *ante*, 88.]

The question now arises whether the legal effect of the instrument in this case is to unlawfully delay creditors; for some delay is necessarily incident to the carrying out of every assignment, and such delay is not embraced by the statute. That is aimed at a delay growing out of the terms of the instrument itself, and forming a part of its design and object; and we think the assignment in question clearly falls within it. The assignment gives the trustee a year and a half before selling the property, and the privilege of then selling on five years' time—thus postponing creditors six years and a half, besides the additional delay that might be incident to collecting the sale notes, those of them the makers of which might happen to be solvent at the expiration of so long a period. If such

Nov. Term, 1857.

JENNERS
v.
DOE.

an assignment does not illegally delay creditors, one postponing them sixty years could not be held to do so.

But thus far, we have expressed our own opinion, not that of the Court. The questions we have discussed, on account of the view taken of the next following one, do not necessarily arise in the case. See *Henderson* v. *Bliss et al.*, 8 Ind. R. 100.

We proceed, then, to the second main question, viz., whether the marshal's sale was void or not.

The sale was at *Indianapolis*, in *Marion* county, and the land sold lay in *Tippecanoe* county. The question presented is whether the land should not have been sold in the county in which it was situated.

There was no law of congress prescribing the duties of the marshal in making the sale, and hence he was left to the law of *Indiana*, as it existed when adopted by the Circuit Court of the *United States*, under the act of congress. *Simpson* v. *Niles*, 1 Ind. R. 196. By that law, sales of real estate on execution were to be advertised and made in the counties respectively where the real estate existed. They could take place in no other. The sheriff, by whom they were to be advertised and made, was simply a county officer, and could not act out of his county. A judgment in one county, had to be enforced against the lands of a defendant in another county, through the sheriff of such other county. And executions from the Supreme Court are enforced by the county sheriffs. But were there no law controlling the matter, except the discretion of the marshal, we should have no hesitation in deciding that the sale, in this case, out of the county, was void, upon the same ground that we would decide a sale void for any other abuse of discretion, or power, in the sheriff in making a sale, where a great sacrifice of property was produced. Purchasers of property at sheriffs' sales, as a general rule, are to be found in the vicinity of the property. These would be the persons who would know its value and be likely to want to possess it. But how could it be expected that persons would come one hundred and fifty miles, from *Posey* to *Marion* county, to attend a sheriff's sale? It

would be equally as improbable that they would do so, as it would be that persons in *Marion* county would know the value of, or desire to obtain, property in *Posey* county. Such sales would be but modes of depriving debtors of their property, without consideration.

We are reminded of the fact that sinking fund sales are made at *Indianapolis.* But they are in pursuance of the voluntary contract of the mortgagor, fixing the time when they are to take place, are after long advertisements, in different parts of the state, and the lands do not, necessarily, lie in the portion of the state where the debtor resides. Great quantities are sold, also, at the same time, furnishing inducement to a crowd of bidders. The cases are not analogous; and one is regulated by statute, so that the Court is not responsible for its hardship, if hardship exists in it.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded for further proceedings.

*Z. Baird,* for the appellants.

*R. C. Gregory* and *R. Jones,* for the appellee.