WM. H. SINCLAIR ET AL. v. HENRY STANLEY.

(Case No. 5426.)

1. EXECUTION SALE.— A sale of land made under execution issuing from a circuit court of the United States in 1873, and which was not made before the court-house door of the county wherein the land was situate, but before the door of the federal court-house in Galveston, was not only irregular, but void, and conferred no title on the purchaser, the same being made in violation of state laws.   Following Howard v. North, 5 Tex., 290; Riggs v. Johnson Co., 6 Wall., 192, and other cases cited in the opinion.

2. TRESPASS — DAMAGES.— The officers of a street railway company, claiming title to an uninclosed piece of ground, which was afterwards decided in the courts to be a valid title in the company, entered upon, tore down and removed without process of law a house occupied by one holding under a lease from parties claiming title under a federal judgment and execution sale thereunder which was afterwards adjudged to be void.   The railway company had before that only such possession as would result from using a track of its road laid across a subdivision of the tract different from that on which the house stood.   In a suit to recover by the party ejected, damages, actual and exemplary, for the alleged wrong and oppression, held:

  (1) The possession of the company was not such as would justify the violence used, if indeed it could be justified at all.

  (2) A legal remedy was provided for the company, and their officers were not authorized to expel by force one who had disturbed their actual occupancy.

  (3) The officers committing the trespass were liable in damages for committing it, instead of resorting to a legal remedy.

  (4) The error of the court in charging the jury that the plaintiff, who was really a trespasser, was the true owner of the premises from which he was forcibly ejected, was such error as to require a reversal where the verdict was for exemplary damages.

  (5) In such a suit the actual damages should be ascertained by determining the real value of the property destroyed, and evidence from the plaintiff stating what he considered it worth to him was not admissible. .

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

The statement of appellant's counsel presented the case substantially correct, thus:

Appellant Stanley, in his petition, alleged lawful possession in himself of lot 8, in the northeast quarter of out-lot 141, in Galveston, upon which he had built a house in which to keep a bar and restaurant, investing all his means in constructing and equipping the establishment, and thereafter occupying and doing a profitable business there, making a profit of $5 per diem. That appellants began a systematic course of malicious persecution and annoyance of appellee, instituted criminal proceedings against him, and finally tore down and carried off his house and its contents. That the value of the house was $600, and its contents were of the value of $277.65, the latter being enumerated in a schedule attached to the petition. That he was thrown out of employment and thereby sustained $500 loss. That he had suffered great distress, etc., loss of credit, etc., and he claimed the above amounts as actual, and $20,000 exemplary damages. Appellants pleaded general demurrer, general denial and "not guilty." They further pleaded, in justification of their acts, that Sinclair was president and Ravey superintendent of the Galveston City Railroad Company, and charged with the custody of its property and with preventing unauthorized intrusion thereon. That at and long before the alleged trespass the said lot 8 was the property and in possession of the railroad company. That Stanley had fraudulently and covinously, in the night time, after the railroad hands had left the premises for the night, entered on said lot and erected his house there, and by next morning was in possession. That acting under advice of legal counsel, taken upon all the facts, appellants as officers and servants of the railroad company caused the house and its contents to be removed from the company's property. That the facts concerning the alleged trespass were these and none other.

Right of possession to the lot 8 was claimed by both parties under John S. Jones (a former owner) as a common source. Appellee claimed under lease from Thacher & Co., who derived title under judgment dated May 25, 1872, and execution from the United States circuit court against John S. Jones in the case of Kate Morgan v. Frank Dirks and others, and levy and sale by the marshal of northeast quarter of out-lot 141, city of Galveston, sale being made in front of the court-house door of said federal court, as recited in the return on the execution and in marshal's deed.

The door of said United States circuit court-house is three hundred yards from the door of the court-house of Galveston county. The doors of the two court-houses front on different streets and in different directions, and are out of sight of each other.

The first execution on said judgment was issued June 26, 1872; the second was issued July 2, 1873, and was levied on same day on the property above named, and sale postponed indefinitely by order of attorneys for execution creditor, given August 5, 1873. The writ was returnable to December term, 1873, and was returned May 7, 1874, without other action by the marshal in reference to the property. The writ bears a credit of $4,949.45, under date of the issuance of the writ. A writ of *venditioni exponas*, based on and reciting the above proceedings, was issued June 17, 1874, commanding sale in front of the United States court room door at Galveston, and thereunder the property was advertised and sold at the door of the United States circuit court rooms on July 7, 1874. The marshal's deed was executed July 9, 1874.

The property, *i. e.*, the northeast quarter of out-lot 141, faces on the beach at Galveston on the corner of Twenty-fifth street and the beach.

There was no judgment or other act of the United States court directing sale to be made at any particular place; the direction appears only in the writs of *venditioni exponas*. Defendants objected to the introduction of the record and marshal's deed, because they showed a void sale, and because the *venditioni exponas* was not supported by the judgment, and void, in that it ordered sale in front of the federal court-house door, and not, as the law directs, in front of the court-house door of Galveston county. The objection was overruled, the defendants excepting.

Defendant Sinclair was president and Ravey superintendent of the Galveston City Railroad Company, and acted as such in the matters complained of. The company claimed title and possession of the northeast quarter of out-lot 141 (including the lot 8 rented by Stanley from Thacher & Co.) under judgment of district court of Travis county against John S. Jones, dated October 31, 1873, and execution thereunder issued June 4, 1874, to Galveston county, and levied June 15, 1874, by sheriff of Galveston county on east half of out-lot 141, in Galveston city, as property of John S. Jones, and regular sale under execution on first Tuesday in July, 1874, and sheriff's deed therefor to purchaser, C. Jordan, dated July 8, 1874, recorded July 9, 1874, and by regular conveyances from Jordan to the Galveston City Railroad Company. In February, 1883, the

railroad company entered upon the property under its claim of title, built and thereafter continuously operated its railroad across the northeast quarter of said out-lot. Lot 8 of the northeast quarter of out-lot 141 is that leased by Stanley of Thacher & Co. Early in April, 1883, about the 1st or 3d, Stanley hauled some lumber to this lot and dumped it there for the purpose of building a house to follow his business as bar and restaurant keeper. Without his knowledge or consent, Sinclair and Ravey had the lumber removed the evening of the same day it was placed there, Sinclair telling him he could not build there.

April 4, 1883, Stanley, out of new lumber, had his house framed at a different portion of the city, and, between midnight of the 4th and 5th of April, 1883, and 7 o'clock on the morning of the 5th, erected the same on lot 8, and on the morning of the 5th was occupying it.

Defendants immediately began building a fence inclosing the quarter out-lot. They had already on the 4th placed posts preparatory to building this fence. Under advice of counsel, Stanley knocked out a panel of the fence to get in and out of his house.

On April 9, 1883, defendants sent a force of hands to build a solid plank fence eight feet high, inclosing and almost contiguous to Stanley's house, so as to preclude egress and ingress. Under advice of counsel, Stanley demolished some fifteen or twenty feet of this fence. Defendant Sinclair thereupon preferred a charge of malicious mischief against Stanley for destroying the fence. In the evening defendants tore down Stanley's house and removed it and its contents some six hundred feet away, to the corner of Twenty-seventh street and the beach. He was informed of its whereabouts, and defendant Ravey offered to carry it to any place he wanted, but under advice of counsel, Stanley refused to have anything to do with it afterwards. The house, including the tables, bar fixtures and hinges, which are named separately in the schedule, attached to the petition, cost and could be replaced for $145.50, covering all cost of material and construction. The valuation, as claimed in the petition, was only supported by testimony of Stanley, that the property was worth that to him. Defendants fenced the property and removed the house and contents under advice of counsel, given upon the facts that the railroad company was entitled to the possession of the lot, and could lawfully remove Stanley and his house therefrom provided it was done without a breach of the peace. Sinclair also preferred the charge of malicious mischief against Stanley for destroying the company's fence. Before building the house, Stanley was informed

by Sinclair and Ravey that it was the company's property he proposed building on, and was forbidden to intrude on it.   The court charged the jury that the Thacher (Stanley's) title was superior to that of the City Railroad Company.   The jury found a verdict and the court rendered judgment in favor of Stanley against Sinclair and Ravey for $865.80 actual damages, and for $3,000 punitory damages.

At the time when Stanley obtained a lease from H. C. Thacher & Co. he did not know of any other claimants to the land.   At the time he hauled the lumber there the lot was bare.

The fence built around Stanley's house by Sinclair's directions, on the 9th of April, was nine feet high and one inch from the house. He could not get in nor out of the house without knocking some of the boards off.

Sinclair thereupon remarked he would attend to Stanley, and drove to town, and in half an hour he was arrested upon Sinclair's affidavit.   He left his little fourteen-year-old son in charge of the house.   Shortly after Stanley was arrested, Ravey, with a force of men, came from each direction to the house and tore it down. Ravey took the boy by the shoulder and shoved him out, then tore down the house and took everything away, hauling it off in drays. The house was worth to Stanley $600; the articles taken away were of the value stated in the petition.

*Scott & Levi* and *Hume & Shepard*, for appellant, that appellee could, under the facts, have no right to the possession, cited: Howard v. North, 5 Tex., 290; Peters v. Caton, 6 Tex., 554; Brown v. Christie, 27 Tex., 73; Tippett v. Mize, 30 Tex., 361; Grace v. Garnett, 38 Tex., 159; Rorer on Judicial Sales, sec. 340; Freeman on Executions, sec. 289.

That the company being in possession and having the right thereto its officers had the right to eject appellee, who could not complain of the force which was necessary to do this, citing: Lowe v. Elwill, 121 Mass., 309; Stearns v. Sampson, 59 Me., 568; Hyatt v. Wood, 4 Am. Dec., 258; Davidson v. Wilson, 11 Q. B., 890; Burling v. Reed, 19 L. J., Q. B., 291; Bolling v. Whittle, 1 Ala., 268; Beers v. St. John, 16 Conn., 322; Slater v. Swan, 2 Str., 871; Ambergate v. Railroad Co., 2 El. & Bl., 793; Rea v. Sheward, 2 M. & W., 424; Terry v. Fitzhow, 8 Q. B., 757; Davies v. Williams, 16 Q. B., 546.

That the damages were too remote, they cited: Jones v. George, 61 Tex., 354; Wallace v. Finberg, 46 Tex., 47; Turner v. Strange, 56 Tex., 141; Blum v. Davis, 56 Tex., 423; Findley v. Mitchell, 50 Tex., 146; Tompkins v. Toland, 46 Tex., 585; De La Zerda v. Korn,

25 Tex. Sup., 188; Sedgwick on Meas. of Dam., 66 *et seq.;* Wood's Mayne on Damages, sec. 58 and notes, 60; 1 Sutherland on Damages, p. 48 *et seq.*

*Waul & Walker,* for appellee, that one who oppressively ejects even a trespasser is liable in damages, cited: Fowler *v.* Stonum, 6 Tex., 72; Cole *v.* Tucker, 6 Tex., 266; McAfee *v.* Crofford, 13 How., 447; Bowden *v.* Lewis, 13 R. I., 189; 43 Amer. Rep., 21; 6 Wait's Act. & Def., pp. 95, 101, 102, 108, sec. 14, art. 12, pp. 115, 116, 117; Wilson *v.* Hinsley, 13 Md., 64; Deane *v.* Clayton, 7 Taunt., 489; Perry *v.* Fitzhouse, 12 L. J., N. S., 23; Cooley on Torts, pp. 57, 58, 85, 190; Abb. Trial Ev., p. 629; 1 Waterman, Tresp., pp. 145, 151, secs. 166, 170.

That he is responsible for the natural consequences of the wrongful act, they cited: Cook *v.* De La Garza, 9 Tex., 358; Findley *v.* Mitchell, 50 Tex., 143; G., C. & S. F. R. W. Co. *v.* Levy, 59 Tex., 542; Pridgin *v.* Strickland, 8 Tex., 435; Horton *v.* Reynolds, 8 Tex., 284; Smith *v.* Sherwood, 2 Tex., 463; McAfee *v.* Crofford, 13 How., 447; Davenport *v.* Russell, 5 Day, 145; 6 Wait's Act. and Def., p. 125; Sedg. Meas. Dam., pp. 89, 90, n., 489, n.

WILLIE, CHIEF JUSTICE.— We are of opinion that the court erred in holding that the title of Thacher & Co. to lot 8 of the northeast quarter of out-lot 141, in the city of Galveston, was valid.

It was derived through a purchase made by one Russell at United States marshal's sale, which sale took place before the door of the federal court-house at Galveston, under a judgment against John S. Jones, one of the defendants in a judgment rendered in the United States circuit court for the eastern district of Texas.

Our statutes in force at the time this sale was made required all sales of land made under execution to take place before the court-house door of the county in which the land was situated. Pas. Dig., art. 3776; Casseday *v.* Norris, 49 Tex., 613.

It is held by this court that a failure to comply with our statutes as to the time and place of making an execution sale of land renders it not only voidable, but void. Howard *v.* North, 5 Tex., 290; Grace *v.* Garnett, 38 Tex., 155; Casseday *v.* Norris, 49 Tex., 613.

The United States statutes, as construed by the federal judiciary, require the marshal to conform to the state laws in making sales of land under execution upon a judgment of a United States court in a common law cause. The statutes, rules and regulations of the state in which the court rendering the judgment is held must be

observed in the same manner and to the same extent, by the marshal or by the sheriff in making such sales. U. S. Rev. Stat., 916; Wayman *v.* Southard, 10 Wheat., 1; Smith *v.* Cockrill, 6 Wall., 756; Riggs *v.* Johnson Co., 6 Wall., 192.

As the sale made by the United States marshal to Russell, under whom Thacher & Co. claimed, was not in conformity with the laws of this state, not having been made before the door of the courthouse of Galveston county, it was therefore void, and conveyed no title. Casseday *v.* Norris, *supra;* Jenners *v.* Doe, 9 Ind., 466.

It was as lessee of Thacher & Co. that Stanley took possession of lot 8, and improved it in the manner shown by the evidence. At that time lot 8 was not in actual occupancy of the Galveston City Railroad Company; but whatever possession the company had of that particular portion of the northeast quarter of out-lot 141 was merely constructive, and arose, if at all, from the fact that its road had been built through a different part of said northeast quarter, the whole of which was claimed by the company.

Under these circumstances it is claimed that the appellants, as agents and officers of the company, were authorized to forcibly destroy the improvements of Stanley, and eject him from the premises to which he set up title.

A line of decisions can doubtless be found to the effect that "one entitled to possession can make peaceable entry, even while another is in occupation, and that it is not unlawful for him to resort to such means, short of the employment of force, as will render further occupation by the other impracticable. Cooley on Torts, 323; Stearns *v.* Sampson, 59 Me., 568; Low *v.* Elwell, 121 Mass., 309.

In the two cases cited, the plaintiffs were tenants holding over and occupying houses belonging to the defendants, after the expiration of the terms for which they were leased. The defendants having peaceably regained possession and actual occupation of their own houses, it was held lawful to remove the tenants so remaining and attempting to hold the premises. A contrary doctrine, or at least one to the effect that force cannot be used to expel the tenant, is held by other courts of high authority. Newton *v.* Harland, 1 M. & Gr., 644; Dustin *v.* Cowdry, 23 Vt., 631; Reeder *v.* Purdy, 41 Ill., 279.

As to whether the principle announced in the two cases just cited is correct or not it is not necessary for us to decide. Neither need we necessarily question its application to a case where the true owner is already in possession and actual occupancy of his premises, and an intruder, without claim of right, trespasses upon them and attempts to

hold any part of them in defiance of the rightful owner. No such case is before us on the present appeal. Had the defendants owned the house which they first rendered uninhabitable and then demolished, and had they been in the actual and peaceable occupancy of this house, and the appellee had intruded himself into it, and refused to vacate upon request, and the appellants had peaceably removed him, the cases would have resembled each other. Some analogy between them might have been drawn had the defendants been in actual occupancy, in pedal possession of lot 8, having the same inclosed, and the plaintiffs had made entry upon this lot, and placed a building thereon. But the defendants' possession was such only as could be inferred from the fact that their railroad company owned the said northeast quarter and their road ran through a portion of it other than that in which lot 8 was included. Lot 8 itself was vacant and uninclosed. Stanley had a regular lease for this lot from parties claiming title to it, under a judgment and execution of the United States circuit court at Galveston. It is true, the sale under this execution had been made at the federal, instead of the county, court-house; but as to whether or not this invalidated the title was a question for the courts to decide, and as applied to the circumstances under which this sale was made had never been determined by the courts of Texas. To say that in this state of case the appellants, although representing the true owner of the lot as subsequently determined by the courts, could forcibly eject the appellee from the premises, destroying his house and other property found in it, is to assert a proposition which, we think, has no foundation in law.

It is to dispense with actions for trying the title or right to possession of land. It is, as Mr. Cooley says, to make a man judge in his own cause with the right to confirm his judgment; to allow him to employ force against a peaceable party; to invite a breach of the peace and a public disturbance instead of a legal settlement of disputed titles. Cooley on Torts, 323.

Our statutes have provided ample remedies at law for the owner of lands against a claimant who takes possession, and attempts to hold as against the true and legal title.

A legal and peaceable remedy was open to the railroad company, and there was no necessity or propriety in its officers taking the law into their own hands and expelling by force one who had not disturbed their actual occupancy, and the appellants should answer in damages for having committed a trespass instead of pursuing the remedies provided by law.

We are not authorized to say, upon the case made by the record, but that the plaintiff was entitled to recover vindictive as well as compensatory damages. But we think the rulings of the court were, in some respects, calculated to increase the amount of exemplary damages beyond what would have been allowed upon charges strictly in accordance with the law of the case. The court held that Stanley's lessor had a good title under the marshal's sale. The case before the jury then was that of the owner in lawful possession of his land driven from it by persons having no right or interest in the property. They were made to believe that mere intruders, without shadow of title, had destroyed the house of the true owner, broken up his furniture and assaulted his son, when, in fact, the party injured was himself the intruder, and the injury had been committed by the agents of the just and legal owners of the property. It is easy to see that such an erroneous view of the case must in a measure have influenced the verdict of the jury in assessing punitory damages. For this error the judgment must be reversed, so that upon another trial the correct law as to the title may be given in charge and the vindictive damages, if allowed, be correctly assessed.

It is proper to say also that the actual damages were not shown by proper evidence to have been as great as the jury allowed. In order to have found the amount they did, they must have allowed what the property destroyed was worth to Stanley as testified by him, and not what was its actual value. There are cases where this might be the proper and only measure of damages; for instance, when property has no recognized standard of value; where the only means of arriving at the sum which will compensate the owner is to ascertain what loss he and his family would sustain by being deprived of articles so specially adapted to their use, and which could not be replaced in the exact condition in which they were destroyed. I. & G. N. R'y Co. v. Nicholson, 61 Tex., 550.

But the house, furniture and everything else destroyed by the appellants had a value easily arrived at and susceptible of proof by witnesses, and they were all capable of being replaced. The court, upon another trial, should confine the evidence to such actual value, and reject proof of what, beyond that value, the plaintiff considers them worth to him. Besides, his estimate seems to have been increased because the location of the house made it a good stand for a saloon — a place where he could have had quite a profitable trade, whereas in fact he had no right to put or to continue it there, or to calculate upon making money at a place upon which he had intruded

as against the rights of the parties from whom he claimed damages.

The language of counsel for appellees, in his opening argument to the jury, made the subject of a bill of exceptions, will not, of course, be repeated upon another trial. Hence we are relieved of the necessity of determining whether or not it is the presumption that, when such language is recalled in the closing address to the jury, its injurious effect has been neutralized and destroyed.

The other errors assigned are either such as will not probably arise upon another trial, or are not of sufficient importance to require attention.

For the errors stated the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered April 28, 1885.]