## FRANK CRAWFORD ET AL. V. Z. B. THOMASON ET AL.

### Decided February 6, 1909.

**1.—Conversion—Definition—Defense.**

Any distinct act of dominion wrongfully exercised over one's property in denial of his right or inconsistent with it, is a conversion. A wrongdoer cannot question the possessor's title or right of possession nor defeat recovery by showing that the taking was in good faith and under mistake.

**2.—Sequestration—Void Writ—Trespass—Damages.**

Authority cannot be conferred on a sheriff by a writ of sequestration to remove from land in controversy the houses and property thereon in the possession of the defendant, and therefore the situation of the sheriff and all parties acting with him under such writ in so doing would be as if no writ had ever issued so far as their liability for actual damages was concerned.

**3.—Conversion—Offer to Return.**

When the acts of the defendant amount to a conversion of the property in question, the owner has the right to so treat it, and to sue for its value, and is not required to accept it if the wrongdoer thereafter offers to return it.

**4.—Trespass—Exemplary Damages—Irrelevant Evidence.**

Where, in executing a writ of sequestration, the sheriff removes the defendant and his property from a lot known as No. 6, to and upon a lot known as No. 5, and in so doing claimed to act exclusively under and by virtue of the command of said writ, the court properly excluded, as irrelevant and immaterial upon the issue of exemplary damages, evidence tending to prove that the defendant had no title to Lot No. 5 and was wrongfully in possession thereof.

**5.—Sequestration—Exemplary Damages—Evidence.**

In a suit against a sheriff and his bondsmen for damages for executing

a writ of sequestration, evidence considered and held sufficient to support the verdict of the jury for both actual and exemplary damages.

**6.—Same—Damages—Defense.**

The fact that a judgment was afterwards rendered in plaintiff's favor against the defendant for the title and possession of the land in controversy, is no defense to a suit by the defendant against the plaintiff for damages for dispossessing the defendant under a void writ of sequestration.

Appeal from the District Court of Jones County.    Tried below before Hon. C. C. Higgins.

*H. G. McConnell* and *Brooks & Scott,* for appellants.—There being no evidence in this case that the writ of sequestration was ever levied upon or attempted to be levied upon the house and goods or either of them, and the only evidence with reference to the acts of the sheriff or any of the appellants of and concerning said house and goods being that they were simply moved off the lot owned by appellant Robertson, the court erred in charging upon conversion at all.    3 Am. & Eng. Enc. of Law (2d ed.), 216, and cases cited; Smith v. Packard, 39 C. C. A., 299; Douglass v. Orr, 58 Missouri, 573; Walker v. Simkins, 2 Texas Appeal Civil Cases, 69; Crass v. Memphis & C. R. Co., 96 Ala., 447.

The court erred in its general charge to the jury in instructing the jury that if they found that said property had been converted by the defendants or either of them, as that term had therein before been defined, to find for the plaintiff the fair market value of the goods and house owned by the plaintiff at the time of such conversion, with interest at six percent from April 5, 1906, to the date of the trial.    The true measure of damages in this case, if any, was the difference between the market value of the property of the appellees at the time the operations began for the removal of the said house, and the time when said removal was completed.    Pacific Express Co. v. Lasker Real Estate Association, 81 Texas, 81; Yoakum v. Dunn, 21 S. W., 411; Phillips v. Hughes, 33 S. W., 157; Texas & P. Ry. Co. v. Meeks, 74 S. W., 329.

One who refrains from the use of property on account of a levy thereon made by an officer under void process, and who is thereby deprived of its earning capacity, may recover the reasonable value of its use during and up to the time that he was informed that the levy was released.    Low v. Ne Smith, 77 S. W., 32.

The court erred in its general charge to the jury by authorizing said jury to render a verdict in this case for exemplary damages. Lynch v. Burns, 79 S. W., 1084.

It was the duty of the defendants in this case to use ordinary care to prevent damage to their property at the time of and while it was being moved by the sheriff, and failing to use ordinary care for that purpose they were not entitled to recover, and the jury should have been so instructed.    Williams v. Yoe, 46 S. W., 659; Southern Kansas Ry. Co. v. Isaacs, 49 S. W., 690; Factors and Traders Ins. Co. v. Werline, 11 L. R. A., 361; Hughes v. City of Austin, 12 Texas Civ. App., 178; Broussard v. S. & E. T. Ry. Co., 75 Texas, 703.

The appellees having no lawful right to occupy the ground of the appellant Robertson, conceding that the writ of sequestration was void, could only recover nominally for the removal of their building from the ground upon which it was unlawfully located. Smith v. Huizar, 25 Texas Sup., 206; Glenn v. Matthews, 44 Texas, 400.

The sheriff having only levied or attempted to levy the writ of sequestration upon the ground without levying or attempting to levy upon the house or contents, there was not any conversion of the house or its contents. There being no proof to show malice there could be no legal recovery for exemplary damages and therefore the court erred in refusing to set aside the verdict of the jury as to exemplary damages. Lay v. Blankenship, 2 Posey, U. C., 273; Willis v. Mc-Natt, 75 Texas, 75; Rankin v. Bell, 85 Texas, 35.

*C. H. Steele, Thomas & Chapman* and *Thomason & Thomason,* for appellees.—When a party is in peaceable possession of property and occupying, using, and enjoying same, no one has the right to forcibly interfere with such possession and by force dispossess the occupant, except an officer clothed with the proper authority and under due process of law, and even then he must act without malice and only in a proper manner, and the certified copies of the petition and answer and judgment in cause No. 402 in the District Court of Haskell County, could have no legal bearing on the issue of damages in this cause, for the reason that the sheriff in taking possession of the property in this case was acting for S. L. Robertson, who claimed no interest in lot No. 5, on which the property was situated; was not a party to the suit in said cause No. 402; that most of the plaintiffs in this suit who were the parties whose possession was disturbed were not parties to said cause No. 402, and the proceedings in said cause No. 402 were in no way connected with the acts of sheriff in ejecting plaintiffs from lot No. 5, and the proceedings in said cause No. 402 was concerning things of which the plaintiffs in this cause are not complaining and occurred subsequent to the time of the conversion of the property complained of in this cause. Sinclair v. Stanley, 7 S. W., 518.

What witnesses E. Sutherland, W. L. Cason or other parties did with reference to their property when same was taken or moved away at other times or places or under other or even like circumstances, can not make a custom by which these plaintiffs would be bound, and it was not the duty of appellees at the time of the taking possession of their property by the defendants to follow up and take care of same under the circumstances of this case; when their property had been forcibly and unlawfully taken possession of by defendants they had the right to elect to let them keep it and sue for the conversion of same. Vickery v. Crawford, 93 Texas, 373; Hofschulte v. Panhandle Hardware Co., 50 S. W., 608; Cooley on Torts, 2d ed., p. 524; Cambell v. Ulch, 60 S. W., 272.

The court did not err in said charge complained of in appellants' sixth assignment of error, for the reason that the writ of sequestration is more onerous than the law requires, in that said writ requires the sheriff to take into his possession the small strip of land therein

described, free from any incumbrance or obstruction by reason of the buildings containing the goods, situated on lot No. 5 and extending over six inches on lot No. 6, thereby requiring the sheriff in advance of a trial to move the house and goods off of the small strip of land described in the writ, and in order to do so compelled the sheriff to remove the house and goods off of lot No. 5, which was not in controversy or involved in suit No. 396, when said writ should have directed him to take said strip of land into his possession and keep the same subject to the future orders of the court, without requiring the sheriff to move the house and goods off of lot No. 5 or the six inch strip of lot No. 6; therefore the writ in question as charged by the trial court conferred no lawful authority on the sheriff or defendants to take into their possession said house and goods and to remove the same from any part of either of said lots or convert the goods of plaintiffs. Finegan v. Read, 27 S. W., 262; Cammack v. Rogers, 74 S. W., 949; Gravity Canal Co. v. Sisk, 95 S. W., 726.

The court's charge upon conversion was correct. The goods were in the house of appellees. The house was upon lot No. 5, in which defendant Robertson had no interest, only encroaching about six inches over on lot No. 6. The writ of sequestration was sued out and Sheriff Collins and the other defendants were purporting to act under this writ. The writ was unauthorized. The appellees were in peaceable possession of the house on lot No. 5, and had been for a number of years. The question of whether there was a levy on the house and goods or the intent with which appellants took possession is of no effect. The house and goods were taken and moved away and appellees dispossessed. The conversion was complete. It was the unlawful exercise of dominion and control over the property of appellees. France v. Gibson, 101 S. W., 536; Bollinger v. McMinn, 104 S. W., 1079; Watt v. Parlin & Orendorff Co., 98 S. E., 428; Davidson v. Oberthier, 93 S. W., 478; Epps & Mattox v. Hazlewood, 89 S. W., 809; Hofschute v. Panhandle Hardware Co., 50 S. W., 608; Cooley on Torts (2d ed.), 524; Southwestern Tel. Co. v. Branham, 74 S. W., 949.

When the property of any person in this State is unlawfully taken possession of by another and dominion and control over same is exercised to the exclusion of the owner even temporarily, he is not bound to receive same when the taker offers it back to him, but may elect to sue the one converting the property for its value. Baltimore & Ohio R. R. Co. v. O'Donnell, 21 L. R. A., 121; Hofschulte v. Panhandle Hardware Co., 50 S. W., 608; Vickery v. Crawford, 93 Texas, 373.

DUNKLIN, Associate Justice.—On the 24th day of March, 1906, a writ of sequestration was sued out by plaintiff in the suit of S. L. Robertson against Oscar E. Oates, T. G. Carney, Z. B. Thomason and E. P. Thomason to recover a portion of lot six in block twenty-five in the town of Haskell, consisting of a strip twelve inches in width and one hundred and forty feet in length, adjoining lot five lying south of lot six. That was not the suit now before us. The writ of sequestration commanded the sheriff of Haskell County

not only to take possession of the strip sued for, but also, in effect, to remove all houses and other encumbrances therefrom. At that time a store house was situated principally on lot five, but also covered the strip sued for. This house consisted of two sections joined together. Defendants Z. B. and E. P. Thomason were in possession of the house and also of a stock of groceries therein, and were engaged in the business of grocery merchants. One section of the building was owned by them and they had leased the other section. Acting under this writ J. W. Collins, sheriff of Haskell County, at the instance of plaintiff A. L. Robertson and over objections of the persons in charge of said house and goods, after levying on the disputed strip of land, removed the house and its contents therefrom to a place thirty feet west and a short distance south of its former location. The actual work of so doing was performed at the instance of the sheriff by Frank Crawford and others whom he had employed to assist him. To properly move the store house it was necessary to separate the two sections thereof and move them separately, but after being moved the two sections were again joined together as before. The goods were not taken from the house, and before moving it the sheriff disclaimed to the persons in charge any desire to take possession of the goods or to interfere with defendants' possession thereof, stating that his only purpose was to remove the house from the strip of land sued for by Robertson, and that he was acting solely under and by virtue of the writ of sequestration which he then had in his possession. When the work of moving the house was begun the persons in charge of the store left it, taking their books of account, and did not return at any time during the progress of the work. After the house was moved and the two sections readjusted the sheriff notified the defendant Thomasons in writing that he had moved the house thirty feet west and a short distance south on lot five; that the house and contents were then uninjured and in as good condition as they were when the sheriff first began to move the house, and requested them to look after the property to prevent possible damage thereto. But the defendants refused to take possession of the property or to have aught to do with it, and the house and contents were afterwards destroyed by fire.

The house was moved by Frank Crawford and his employes under a contract between himself and the sheriff who hired the work done. Crawford testified that before closing the contract with the sheriff, E. P. Thomason, defendant in possession of the house, agreed with him that the house might be moved, but the undisputed testimony shows that afterwards, when Crawford returned to begin work, the defendants then objected, and no evidence was introduced to show that they ever thereafter consented that the house should be moved. The evidence further shows that at least three or four days were consumed in moving the house. Thereafter the suit was tried and judgment was rendered in favor of plaintiff S. L. Robertson against the defendants for the title and possession of the strip of land sued for. Upon appeal by defendants this court affirmed the judgment of the court below, but held that there was no authority for the issuance of a writ of sequestration to move a house from land in advance

of a trial, and that the writ of sequestration so issued should have been quashed by the trial court upon the motion made by defendants praying for such an order.

The suit now before us for consideration was for conversion, instituted in the District Court of Jones County by appellees against appellants to recover the value of the goods and store so moved by the sheriff and his employes, and also for exemplary damages. A judgment was rendered in favor of the plaintiffs against defendants S. L. Robertson, Frank Crawford, J. W. Collins, John Crawford, F. G. Alexander, J. S. Keister, and A. C. Foster for actual damages in the sum of twenty-one hundred and fifty dollars and twenty-four cents, and against S. L. Robertson and J. W. Collins for one thousand dollars exemplary damages, the judgment against Alexander, Keister and Foster being against them as sureties on the sheriff's official bond. The judgment was in favor of Oscar E. Oates, Sam Crawford, W. H. Crawford, and John E. Robertson, who were also defendants in the suit. The actual damages so awarded were the market values of the stock of goods and that section of the house that was owned by appellants. All the defendants cast in the suit have appealed to this court and the contention which is made the basis of several assignments of error is that under the facts which have been above set out appellants were not guilty of a conversion of appellees' property.

Mr. Cooley in his work on Torts (2d ed.), page 524, defines conversion in the following language: "Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion." This definition seems to be in accord with the weight of authorities on the subject of conversion, which further hold that the wrongdoer can not question plaintiff's title or right of possession, nor defeat recovery by showing that the taking was in good faith and under a mistake. 28 Amer. & Eng. Enc. Law (2d ed.), 679, 681, 691, 693, 674; First Nat. Bank v. Brown, 85 Texas, 80; Vickery v. Crawford, 93 Texas, 373; Hofschulte v. Panhandle Hdw. Co., 50 S. W., 608. The writ of sequestration under which the sheriff acted in moving appellees' store house conferring no lawful authority for such act, the situation of all parties acting with him is the same as if no writ of sequestration had ever issued, so far as affects appellees' claim for actual damages. While the sheriff distinctly and repeatedly disclaimed any purpose to take charge of appellees' goods situated in the house, and expressly stated that his only purpose was to move the house from the strip of land claimed by appellants in the suit, we are yet constrained to hold that his acts in pulling apart the two sections of the house and moving it with all its contents thirty feet back from its former location, thereby necessarily interrupting appellees' business, was the exercise of dominion over the property inconsistent with appellees' title, and substantially an ouster of plaintiffs from the possession thereof. Title to the goods and one section of the house was vested in appellees, and they also held the other section of the house under lease. This of course gave them an unqualified right of possession to all the property. That the act of the appellants in moving the

store house without the consent and over the protests of appellees was a wrongful act, we think is settled by our Supreme Court in the case of Sinclair v. Stanley, reported in 64 Texas, 67, also in 69 Texas, 718.

In that case the Galveston City Railroad Company claimed title to lot 8 in N. E. quarter of out-lot 141, city of Galveston, and had built its road through another portion of said N. E. quarter. Stanley had leased the lot from Thacher & Company and hauled lumber on the ground with which he intended to build a house. Without the knowledge or consent of Stanley, agents of the railway company removed the lumber and hauled posts on the ground to be used in fencing the land. During the following night Stanley erected a house on the lot, the house having been previously framed and ready to be erected. Later agents of the company tore down and removed the house and its contents upon other land, notifying Stanley of its whereabouts and offering to carry it to any place Stanley would select. The offer was refused and Stanley instituted suit against the company for damages done to the house and contents by the company. In that suit the Supreme Court held that the title to the lot was vested in the company, but that the removal of the house was wrongful, and in the first report of the case, 64 Texas, 74, the following language is used: "To say that in this state of case the appellants, although representing the true owner of the lot as subsequently determined by the courts, could forcibly eject the appellee from the premises, destroying his house and other property found in it, is to assert a proposition which, we think, has no foundation in law." And again on the same page: "A legal and peaceable remedy was open to the railroad company, and there was no necessity or propriety in its officers taking the law into their own hands and expelling by force one who had not disturbed their actual occupancy, and the appellants should answer in damages for having committed a trespass instead of pursuing the remedies provided by law." Again the court says on the second appeal of that case, 69 Texas, 727: "Adequate provision has been made in our laws for the recovery of possession of property which has been forcibly taken or forcibly detained, and, as said in Warren v. Kelly, 17 Texas, 551, if one holding the title to land was permitted, by himself or his agent, with force and arms to dispossess one in peaceable possession, the consequences would be breaches of the peace, oppression and bloodshed, and trial by the use of the bowie knife and revolver would be resorted to instead of the quiet and peaceable remedy afforded by the due course of law in the judicial tribunals of the country." While in that suit the wrongs alleged were by the plaintiff treated as a trespass and damages were asked on that theory, it is well settled by the authorities that when a wrong complained of amounts to a conversion the injured party has the right to so treat it and to sue for the value of the property so taken, and also to refuse to accept it when the wrongdoer offers to return it. Weaver v. Ashcroft, 50 Texas, 444; Hofschulte v. Panhandle Hardware Co., 50 S. W., 608.

Upon the trial appellants offered in evidence certified copies of

plaintiff's petition, defendants' answer and the judgment of the court in the District Court of Haskell County, wherein Oscar E. Oates sued and recovered from Z. B. Thomason and E. P. Thomason the title and possession of lot five prior to the occasion in controversy in this suit. This evidence was offered to show that the Thomasons were trespassers on lot five, and therefore pertinent upon the issue of exemplary damages, and to the action of the court in excluding the evidence appellants have assigned error. We think there was no error in the ruling. The house was never moved from lot five, and the sheriff never claimed at the time of moving nor in his testimony that his acts were based upon any belief on his part that under the judgment so offered in evidence appellants had no lawful right to occupy lot five, but on the contrary he claimed that his only purpose was to move the house from the strip of land described in the writ, in obedience to commands contained in the writ. O'Brien v. Hilburn, 22 Texas, 624.

We also approve the ruling of the court in excluding the offered testimony of witnesses Sutherlin, a barber, and Cason, a hardware merchant, to the effect that they had moved their houses, situated in the same block with the same front, back on a line with the house in question after it was moved, and that there was no material difference in the volume of their business after they moved. The market value of the property was the only measure of actual damages submitted to the jury, and we are unable to perceive how the evidence could be relevant to the issue of exemplary damages.

No doubt appellants believed in good faith that the writ of sequestration conferred the right to move the house, but that is no valid defense to the charge that they are guilty of a conversion of appellees' property. Cooley on Torts (2d ed.), pp. 519 and 529.

Appellee G. W. Thomason testified that when he protested against the house being moved the sheriff said, "Well, by G——, if you don't believe we are going to move you just watch and we will show you;" and that he made the further remark, "By G——, they had a bond that would cover several such stocks of goods as that, some three or four or five if I doubted it." This witness further testified that when he told the Crawford boys, "Go away and let this building alone; don't move it," Sheriff Collins walked up and said to witness, "Go on away from here and let these boys alone; let them move the house." This testimony was contradicted by the testimony of the sheriff, but the jury were the exclusive judges of the credibility of the witnesses and we can not say that the verdict for exemplary damages was not warranted by the evidence. (Land v. Klein, 21 Texas Civ. App., 3; 28 Amer. & Eng. Enc. (2d ed.), 610 and 611.)

If there was any error in the abstract definition of the term "conversion" given in the court's charge, we think the same was cured in the instruction which followed it, wherein the jury were told the facts which they must believe to have been proven in order to find that the defendants were guilty of a conversion. At all events, the defendants' acts in moving plaintiffs' property, as above recited, were proven beyond controversy and we think they necessarily show a

conversion, thus rendering harmless any error in the court's charge defining the term "conversion." ·

Finding no error in the judgment, it is affirmed.

*Affirmed.*

Writ of error refused.