PANHANDLE & S. F. RY. CO. et al. v. TALMAGE. (No. 1415.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 27, 1918.)

1. COMMERCE ⬡33—CARRIAGE OF FREIGHT—INTRASTATE SHIPMENT.

Where a hay dealer at F., Tex., his distributing point, received by rail a carload of hay from A., N. M., and at F., rebilled the shipment to his customer at M., Tex., and prepaid the freight, the shipment under the rebilling was intrastate.

2. CARRIERS ⬡94(4) — FREIGHT — PENALTY FOR DETENTION—ACTION FOR CONVERSION.

In suit against a railroad for conversion of a carload of hay, the evidence and verdict establishing the conversion, plaintiff cannot recover the 5 per cent. per month detention penalty prescribed by Rev. St. 1911, art. 6554, on the value of the hay up to the time of the judgment; the action for conversion being an election to treat title of the date of conversion.

3. TROVER AND CONVERSION ⬡46—MEASURE OF RECOVERY—VALUE OF GOODS.

In an action for conversion, the measure of recovery is the value of the goods on the date of the conversion.

4. COMMON LAW ⬡14—ADOPTION BY STATE—CONVERSION.

The state of Texas having adopted the common law, though not the common-law form of action in trover for conversion, the Court of Civil Appeals must resort to the common law for the principles governing the tort of conversion.

5. CARRIERS ⬡105(1)—CARRIAGE OF FREIGHT—DAMAGE FROM DELAY OR DETENTION—MEASURE.

In an action against a railroad for damages to property shipped from delay or detention, the actual injury to the property is the measure of damages.

6. TROVER AND CONVERSION ⬡13—RIGHT OF ACTION.

When a wrong complained of amounts to a conversion, the injured party has the right to so treat it, and to sue for the value of the property.

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. TROVER AND CONVERSION ⚌9(3)—IMPLICATION OF WRONGFUL ACT—NONDELIVERY.**

Conversion implying a wrongful act, mere nondelivery of property lawfully in possession will not constitute conversion, as there must be a demand and refusal.

Appeal from Deaf Smith County Court; Jas. A. Hughes, Judge.

Action by Frank Talmage, Jr., against the Panhandle & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and rendered in part.

W. C. Reid, of Albuquerque, N. M., and Madden, Trulove, Ryburn & Pipkin, of Amarillo, for appellants.

W. H. Russell, of Hereford, for appellee.

HUFF, C. J. This action was brought by Talmage against the appellant Panhandle & Santa Fé Railway Company and other roads, as connecting carriers, for the value of a carload of hay, and for the statutory penalty of 5 per cent. per month of the value for detention of the hay. The jury found that the value of the hay on the 29th of June, 1914, was $164.64, and answered the following special issue: "Did the defendant willfully refuse to deliver said hay after its arrival at destination?" in the affirmative. We take this statement of the facts from appellee's brief:

"On June 22, 1914, Frank Talmage, Jr., the appellee, was the owner of a car of alfalfa hay at Farwell, Tex., which he consigned to J. P. Hillard, on June 29, 1914. Hillard made demand for delivery, and it was refused. The transportation charges were all prepaid, and the carriers did not demand any additional charges; neither did any of them assign any reason for the failure to deliver the hay.

"Mr. Talmage learned of the failure to deliver, and sent his salesman, Mr. Smith, to Mauriceville, to try to learn what the trouble was and to effect delivery. Mr. Smith went to Mauriceville and took the matter up with the local agent at that place, who was the joint agent for the defendants, except the Panhandle & Santa Fé. This agent informed Smith that there seemed to be some difficulty between the various roads as to a division of freight, and the car was being held in order to determine the matter. He (Smith) then went to Beaumont, and also to Houston, and could never get any satisfaction, or any definite reason why the car was not delivered. Smith also testified, and it was undisputed, that the car was in front of Hillard's warehouse with the door *locked*.

"Numerous letters and telegrams were exchanged between the various railway companies and Mr. Talmage, but no delivery was ever made, and it seems that the hay remained at Mauriceville till some time in January, when it was moved, probably to Houston, and sold for charges; but in the meantime the owner of the hay and the consignee were both trying to effect delivery, Mr. Hillard wanting the hay badly.

"Mr. Talmage expended a great deal of time and money in his endeavors to effect delivery, and lost a customer. The car could not be unloaded at any other place on account of the physical conditions.

"Plaintiff, Talmage, sued for the value of the hay, and alleged and proved that the carriers willfully and maliciously refused to make delivery, and asked for the statutory 5 per cent. per month penalty."

The facts further show that this particular carload of hay was shipped by Talmage from Artesia, N. M., to Farwell, Tex., upon a bill of lading to that point, and that after its arrival at Farwell he rebilled the shipment to J. P. Hillard, Mauriceville, Tex., and prepaid the freight. The facts further show that he was a dealer, and that his distributing point was Farwell, Tex., and after shipping his hay to that point he either unloaded and placed it in the warehouse, or reshipped it to his customers at other points, and that at the time he shipped this hay from Artesia it was not intended to go beyond Farwell, and to the consignee in a later shipment; but, as we gather from the evidence, he received the order from the consignee, and upon the arrival of the car entered into a new contract with the railroad, consigning it to the consignee, prepaying the freight therefor.

The court rendered a judgment for the value of the hay, as found by the jury, and for the sum of $359.47, as penalty for detention of the hay under the statute. The penalty recovered in this case is under article 6554, R. C. S., which reads as follows:

"In case of the refusal by such corporation, or their agents, to take and transport any passenger or property, or to deliver the same, or either of them, at the regular appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit; and in the case of transportation of property shall in addition pay to such party special damages at the rate of five per cent. per month upon the value of same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation: Provided, in all suits against such corporation under this law the burden of proof shall be on such corporation to show that the delay was not negligent."

[1] The first group of assignments and propositions assail the judgment of the court for the penalty, on the ground that the shipping contract was for an interstate transportation, and therefore the statute authorizing the recovery of a penalty had no application. Without discussing the question, we are inclined to believe this shipment intrastate, and for that reason overrule the various assignments. This case, as to the character of the shipment, we think governed and controlled by the rule announced in the following cases: Railway Co. v. Pace, 184 S. W. 1051; Railway Co. v. Taylor, 103 Tex. 367, 126 S. W. 1117, 1200; Railway Co. v. Texas, etc., 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540.

[2] The next series of assignments present the proposition that the suit was for damages for the conversion of the hay, and that the evidence and the verdict of the jury established such conversion, and for that reason the appellee could not recover the 5 per cent. per month on the value of the hay for its detention up to the time of the judg-

ment. If this suit is for damages for conversion, and the hay is shown to have been converted, and the jury so found, the assignments and propositions are well taken. The Court of Civil Appeals for the Second District, as we understand that court, so holds. M., K. & T. Ry. Co. v. Rines, 37 Tex. Civ. App. 618, 84 S. W. 1092. We believe the ruling in that case correct. It will not be denied, we take it, that the statute herein quoted gives the right to sue for damages and 5 per cent. special damages for the negligent detention of goods to the owner or shipper thereof. If the party is not the owner, or if the right to sue for the goods or damages to them has been parted with, then the penalty for their detention cannot be recovered by the shipper.

[3] The shipper, where there has been a wrongful taking of the goods, does not necessarily lose the title to the goods, and he may sue for the goods; but, if he elects to sue for conversion, his recovery will be the value upon the date of the conversion. In this case that date is fixed as of June 29, 1914, by the pleadings and evidence, and the judgment is so rendered. Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084. Our Supreme Court, in discussing the distinction between the action of detinue and trover, says in many cases it is at the option of the plaintiff which he will pursue.

" 'The former asserts a continuing property in the plaintiff, and alleges the wrong to consist wholly in withholding the possession of his goods, from him, by their bailee; while the latter affirms that, although they were once the proper goods of the plaintiff, they have been made the goods of the defendant, and complains of the injury caused by this conversion.' The distinction amounts to this: That by alleging detention the plaintiff makes himself owner, and by alleging conversion the defendant is made the owner; and the loss falling upon the owner, it must, in one suit be borne by the plaintiff, and in the other by the defendant. In detinue it is said that a jury is to find the present value; that 'great alterations may happen in the value of things demanded, pending the action; and the object of the action, so far as regards the things themselves, is to regain them, such as they are, or, if that may not be done, then their value.' " Porter v. Miller, 7 Tex. 468, 475.

We cite this case as illustrating the relation of the parties to the property in an action of trover for conversion.

[4] Inasmuch as we have adopted the common law, though not the common-law form of action, we must resort to the common law for the principles governing conversion. O'Shea v. Twohig, 9 Tex. 336; Elder, etc., v. Railway Co., 105 Tex. 628, 154 S. W. 975. The statute authorizes the recovery of the penalty or special damages for "negligent detention." Its phrasing excludes the idea that a recovery may be had when the action is for conversion. "A mere detention of another's chattels, which rightfully come onto one's possession, is not an actionable conversion." 38 Cyc. 20–28.

[5] If this was an action for damages for the property on account of delay or detention, the actual injury to the property would be the measure of damages. This suit is for "willfully failing and refusing to deliver the goods," alleging, also, that they should have been delivered on June 29, 1914, and seeks a recovery for their value as of that date; that appellants failed and refused to deliver, and still so fail, "and have on demand of plaintiff willfully and still willfully fail and refuse to deliver said goods," and, though often requested, fail and refuse to deliver the goods, or to pay the value thereof, or any part thereof—praying for a judgment for the damages, and for the statutory penalty. The evidence was confined to the value at destination on the date alleged, and it was shown that the delivery was demanded and refused; that the hay was then in good condition, and arrived at its destination within a reasonable time; that the car was at the warehouse of the consignee, but was locked, and the agent of the railroads refused to deliver the goods, though requested so to do. The action, we think, is for the value of the goods upon their conversion on the 29th day of June, 1914, and the facts show such conversion.

[6] When a wrong complained of amounts to a conversion, the injured party has the right to so treat it, and sue for the value of the property. Crawford v. Thompson, 53 Tex. Civ. App. 561, 117 S. W. 181. This, we think, appellee clearly did in this case. The allegations and proof bring this case within the definition of conversion. France v. Gibson, 101 S. W. 536; McCarthy v. North Texas Loan Co., 101 S. W. 835; Railway Co. v. Patterson, 192 S. W. 585.

[7] It has been held in this state mere delay in the transportation of goods is not conversion. Railway Co. v. Tyler-Coffin, etc., 81 S. W. 826. But, under such circumstances, there must be a demand and a refusal to deliver, in order to constitute a conversion. Conversion implies a wrongful act. A mere nondelivery will not constitute a conversion. Davies v. Railway Co., 62 Tex. Civ. App. 599, 133 S. W. 295; Elder, etc., v. Railway Co., 105 Tex. 628, 154 S. W. 986, 987. In this case a wrongful act was shown, and that demand for the goods was made and refused, both by the allegations in plaintiff's petition and the evidence, and the jury so finds. Appellants, by their answer, also admit the conversion. Under this record the court was in error in rendering judgment for the special damages, $359.47.

The judgment will be affirmed as to $164.64, the value of the hay at the time of the conversion, with interest from that date to the rendition of the judgment; but for the special damages the judgment will be reversed, and here rendered, that the appellee take nothing by reason of his suit therefor, and that the costs of this appeal be taxed against the appellee.

Affirmed in part, and reversed and rendered in part.