## PITTMAN-HARRISON CO. v. FOX BROS. et al. (No. 2330.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 22, 1921. Rehearing Denied March 10, 1921.)

1. Carriers ⬁64 — Railroad did not violate shipping instructions permitting inspection, by placing car containing goods on buyer's private track.

Where seller authorized railroad to allow buyer to inspect goods without advance payment of draft and delivery of bill of lading, without stipulating in what particular place and manner the inspection should be made, the railroad did not violate instructions by placing the car containing the goods on the privately owned track of buyer adjacent to buyer's warehouse for the purpose of enabling buyer to properly inspect goods.

2. Sales ⬁168(3) — Buyer's possession of goods for purpose of inspection held not conversion.

Where railroad placed car containing goods on buyer's privately owned track adjacent to its warehouse to enable buyer to properly inspect goods before payment of draft and delivery of bill of lading pursuant to instructions from seller to allow inspection, and where samples of goods were taken from car to warehouse for purposes of inspection and kept therein from March 26th to April 8th, because of absence of shipping list necessary to proper inspection, and where on inspection the goods were rejected for noncompliance with order, and the railroad on being so informed again took possession, there was no conversion by buyer; the buyer having had possession merely for the purpose of inspection.

3. Sales ⬁177—Buyer not required to accept goods of different variety from those purchased.

Where peas of a particular variety were sold, the buyer was not obliged to receive and pay for those tendered, unless of the variety specified in the contract.

4. Sales ⬁168(3)—Buyer given right to inspect goods was entitled to ascertain whether they complied with contract.

Where seller of goods of particular variety authorized railroad to permit buyer to inspect goods before payment of draft and delivery of bill of lading, the buyer was entitled to make such inspection as would enable him to ascertain whether the goods complied with contract.

5. Trover and conversion ⬁1—"Conversion" defined.

Conversion is any distinct act or dominion wrongfully exerted over one's property in denial of his right or inconsistent with it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conversion.]

Appeal from District Court, Camp County; J. A. Ward, Judge.

Suit by Fox Bros. against the Pittman-Harrison Company and others. From judgment for plaintiff against named defendant, the named defendant appeals. Reversed and remanded.

The appellees brought suit against the Director General, operating the Missouri, Kansas & Texas Railway of Texas and against the Pittman-Harrison Company, a corporation, jointly and severally, for damages for alleged conversion of a carload of peas.

The Director General answered by denial, and specially that the bill of lading required inspection of the peas by the Pittman-Harrison Company, who, after such inspection, rejected the shipment, and the shippers, being duly notified thereof, failed to receive and unload the peas, and the Director General stored the same; that after the peas were stored the shippers failed and refused to take or authorize a disposition of them, and, being perishable property, they were duly sold by the railway company after due advertisement for $125, and that, after deducting $115 storage charges from this amount, there is a balance of $9.47 due and payable to plaintiffs or any person entitled thereto.

The defendant, Pittman-Harrison Company, filed a plea of privilege to be sued in Grayson county, their domicile. The plaintiffs contested the plea of privilege. The bill of exception recites that after hearing the evidence in support of the plea it "was overruled by the court," but no order of the court appears in the record showing any action on the plea. This defendant then answered by general denial, and specially that the peas were only temporarily removed from the car for inspection under a contract justifying it, and not for appropriation; and by cross-action prayed to recover back from the plaintiffs the consideration paid of $1,250, by reason of the failure to carry out an alleged contract under date of April 8, 1918, to ship it a certain quantity and quality of peas, and also

⬁For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

prayed for $1,250 for money had and received by the plaintiffs.

After hearing the evidence the court peremptorily instructed a verdict in favor of the plaintiffs against Pittman-Harrison Company for $821.73 damages and interest, and against the cross-action of Pittman-Harrison Company, and in favor of the Director General. Pittman-Harrison Company appeals from the judgment of the court entered in accordance with the instructed verdict of the jury.

On February 12, 1918, Pittman-Harrison Company contracted to buy from Fox Bros., f. o. b. Newsome, Tex., at stipulated prices, a certain number of bushels of each of several varieties of peas. The peas were to be of first-class quality, and sacked and tagged and loaded in a car. Fox Bros. sacked the peas and loaded them in a car furnished by the Missouri, Kansas & Texas Railway Company on March 22, 1918, and obtained a bill of lading therefor. The bill of lading recited:

"Fox Bros., shipper. Consigned to order of Fox Bros., destination, Sherman, Tex. Notify Pittman-Harrison Company at Sherman, Tex. Cow peas in sacks. Allow inspection."

Fox Bros. attached to the bill of lading a draft in the sum of $2,085.10 signed by them and addressed to Pittman-Harrison Company, Sherman, Tex., and payable to the order of the First National Bank of Newsome, Tex. An invoice of the shipment was also attached to the bill of lading. Fox Bros. indorsed the bill of lading, and the bank indorsed in blank the draft, and the same were mailed to a bank in Sherman. The car of peas reached Sherman on March 26, 1918, and the very day the car reached there Pittman-Harrison Company were notified by the railway agent of its arrival. By direction of the railway agent the car was placed, on March 26, on the private owned track running by and into the warehouse of Pittman-Harrison Company. On March 26, Pittman-Harrison Company unloaded the car, and placed the peas in their warehouse. "This was done," according to the evidence in behalf of Pittman-Harrison Company—

"so that the contents could be examined by Pittman-Harrison Company. The car was a mixed car of different varieties of peas, and they were put up in sacks, and there was a large number of them, and the only way that such contents of this car could be thoroughly examined was by unloading the car. The car had been shipped with the privilege of examination. Each sack of the peas is examined as the sacks are taken out of the car. A grain or seed sampler is used. At the time of the unloading on March 26 Pittman-Harrison Company did not have an invoice from Fox Bros., and did not know what kinds or varieties of peas were in the car, and did not know what Fox Bros. claimed were in the car. The car was not checked with the loading list until March 29. I wrote a letter on March 26 to

Fox Bros., advising them that we had no invoice for the car, and asked them to send us the invoice. The invoice was sent by Fox Bros. by letter dated March 27."

The letter mentioned of March 26 says:

"Cow peas shipped us is in, but we have no invoice from you as yet for this car. We would therefore ask that you send us at once an invoice covering the number of sacks, variety, and number of bushels for each variety loaded in the car. Car is N. Y. C. 216266."

The reply letter of Fox Bros. of March 27 says: "We are sending you a copy of invoice" that was attached to the bill of lading. On March 29, when the peas were inspected and checked with the invoice, it does not appear that the bill of lading with the draft attached had been received by the bank in Sherman, but it appears that the same was in a bank in Forth Worth and Pittman-Harrison Company at that time had no notice of it or its whereabouts. After checking and examining the peas Pittman-Harrison Company testified:

"It was found that Fox Bros. had not shipped in accordance with the order to them, but had shipped an entirely different lot of peas; they had increased one variety over 250 bushels, and had failed to ship some other varieties ordered, and had shipped less of some varieties ordered. Before accepting the shipment I caused a letter to be written to Fox Bros. submitting a proposition to them and inclosing a check for $1,250 part payment."

The letter above mentioned, dated April 8, addressed to Fox Bros., reads as follows:

"We unloaded the mixed car of peas you shipped us a few days ago and from our unloading list, as furnished by our warehouse foreman, we are very greatly surprised that you did not ship us a car of peas according to contract, by any means. We had unloaded this car before we received your invoice: otherwise, we would have phoned you before unloading the car that we would not accept same according to your invoice. We bought from you, 500 bushels of Whippoorwill cow peas, 100 bushels of Clay peas and several other varieties. According to our unloading list, you shipped us about 750 bushels of Whippoorwill, or 250 bushels more than we bought. Only shipped 1 sack of Mixed New Era peas, instead of 50 bushels and did not ship a single bushel of Black Cow peas, whereas we bought 75 bushels. Invoice called for some 15 bushels of Crowder and Red Ripper peas. Our confirmation of purchase does not show that we bought any Red Rippers, and our unloading list does not show that you shipped a bushel of these.

"You can readily see from our statement above that you certainly lacked a great deal in having filled our order according to purchase. We had depended on getting the New Era and Black Cow peas in this car from you and after we bought the car from you, we quoted them out on our price list and received some orders which we were unable to fill after unloading your car and finding that neither of these varieties were in the car. As you probably know, these two varieties are usually very scarce,

and as a matter of fact are worth more than the Whippoorwills, Clays or other varieties of Cow peas. Under the circumstances, we feel that it is perfectly right and proper for you to furnish us the quantities of Black Cow peas and the New Era Peas bought from you, at a delivered price the same as if you had put them in the car and if you cannot furnish same to us promptly we feel that it would be perfectly right and proper for us to buy them in for your account, or else charge you with the difference in value. ·

"We will hold the excess number of bushels of Whippoorwill peas you shipped us here subject to your order, which will be about 250 bushels.

"We furthermore claim that you should furnish us with 100 bushels of Clay peas at a delivered cost, the same as if you had included these in the order. Under the above circumstances, we are not paying your draft, and have requested our bank to return it.

"We are inclosing you our check for $1,250.00 and just as soon as we can get together in this matter, we will pay you any balance which may be due you. Please let us hear from you promptly, as to what disposition you wish us to make of the excess Whippoorwill peas shipped to us, and also about the New Era, Black and Clay peas."

Fox Bros. received the check mentioned, cashed it, and retained the money to their use. Fox Bros. by attorney replied by letter dated April 11, 1918, to the above letter:

"There is handed me for attention a letter from you and other papers relative to a car of peas shipped by them to you and for which you have held back part of the purchase price after unloading the car. This car was shipped with draft attached to the bill of lading with instructions to allow inspection. You had ample opportunity to have found out what varieties of peas were in the car by looking at the invoice attached to the bill of lading accompanying the draft, and also had privilege of inspecting the car of peas. So it appears to me that you should at once forward the amount yet due as showing by the invoice of Fox Bros. This of course they are expecting you to do and unless the amount is forwarded at once all parties responsible for unloading without the bill of lading with draft attached being cared for will be expected to look after payment of same. Please let us hear from you by return mail with draft for the balance due which is $835.10."

After receiving this letter Pittman-Harrison Company on April 12 "reloaded these peas," according to their evidence, "back into another car, different from the car they were received in," and notified the railway agent of their refusal to accept the shipment. All the peas in the original packages were reloaded in the car. The agent of the railway company testified:

"When this shipment reached Sherman it was set on a track accessible to them [Pittman-Harrison Company] for any proper inspection. An inspection of a carload of merchandise could not be made satisfactorily in a car. My experience has taught me that it could not be done as to peas without getting into every sack. That car was not by me nor under my authority delivered or turned over to Pittman-Harrison Company after it came in there for any purpose other than the inspection. * * * The notation 'Allow inspection' meant we were to allow the consignee to inspect the contents of the car before he accepted it and before we delivered it to him. * * * I did not authorize Pittman-Harrison Company to take these peas out of the car and place them in their warehouse."

The railway agent further testified that he received and took charge of the shipment, and held it upon notification of Pittman-Harrison Company of its rejection, and never intended a final delivery to Pittman-Harrison Company. On April 15, 1918, Fox Bros. received notice from the railway agent that Pittman-Harrison Company had refused to take the car of peas and had rejected the shipment. Fox Bros. were asked by the railway agent for an order for the disposition of the peas; and, receiving no reply, the peas were stored by the railway agent, and subsequently, after proper advertisement, sold at public auction for cash by the railway agent. Fox Bros. testified:

"I said I shipped the peas as per contract, but more of one kind than the contract called for. I don't think I shipped some that the contract didn't call for. I did ship 300 or 400 bushels more than they bought. I shipped them more peas of one variety than they ordered. I think it was about 175 more bushels of one variety than they ordered. * * * It is a fact that the order given me by Pittman-Harrison Company wasn't filled exactly as it was ordered. It is also a fact that Pittman-Harrison Company had a right to examine and inspect the car when it was received in Sherman."

The draft attached to the bill of lading was never paid, and both the original draft and the bill of lading were returned by the bank in Sherman to Fox Bros., and Fox Bros. are still at the trial in possession of the same. The bank at Sherman notified Pittman-Harrison Company about March 29 that the draft and bill of lading were there, and Pittman-Harrison Company directed the bank to return the draft, as the shipment was refused.

C. E. Bryson, of Pittsburg, and French & Harney, of Sherman, for appellant.

W. D. Suiter, of Winnsboro, and Bass & Engledown, of Pittsburg, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The first assignment of error is:

"That the court erred in charging the jury peremptorily that this defendant was guilty of conversion under the evidence in the cause."

The plaintiffs pleaded as ground for liability against defendant:

"That defendant Pittman-Harrison Company received said car of peas and took possession of the same knowing that said draft had not

been paid, and without order or authority from this plaintiff, and knowing that the defendant railway company was violating its agreement and contract in delivering said car of peas without bill of lading being presented and unloaded same in their warehouse at Sherman, Tex."

Fox Bros., under the bill of lading, directed and made it the duty of the railway company, while the peas were in its charge and control, to "allow inspection" of the sacks of peas in the car by Pittman-Harrison Company. This "inspection" was to be allowed before and without advance payment of draft and delivery of the bill of lading. Pittman-Harrison Company then had the right of "inspection" of the peas before they were legally called upon to finally accept or reject the shipment, and before and without advance payment of the draft and bill of lading. And it was proven practically without dispute that the railway agent, for the purpose of having the car "accessible to them [Pittman-Harrison Company] for any proper inspection," placed the car of peas on the privately owned railway track of appellant adjacent to its warehouse. Moreover, Pittman-Harrison Company, it appears, accepted the placing of the car at this place, as a mere convenience to them, for the purpose at the time of making an inspection of the contents of the car. In this placing the car on the track mentioned the railway company did not violate its shipping instructions or any condition upon which the delivery for inspection only is authorized. It is not stipulated in the bill of lading in what particular place and manner the inspection could or should be made. Having general authority under the shipping contract, as the railway company did, to "allow inspection," it could not be said that the railway company exceeded such authority in violating of the shipper's right in consenting, if it chooses, and as the railway company did, to "allow inspection" at the place mentioned instead of at the railway depot. And neither could it be said that Pittman-Harrison Company in making inspection at its own place instead of at the railway depot was without authority to do so, and was acting in wrongful interference with the shipment. The inspection at this place by Pittman-Harrison Company would be under consent of the railway company having general authority to "allow inspection." The right of Fox Bros., as owners, were not at all interfered with. Having this authority, as Pittman-Harrison Company did, to make "inspection" of the peas, they could proceed to exercise that privilege in a reasonable manner, and in this connection it was proven without dispute that an inspection of the peas could not satisfactorily be made in a car. As a consequence of this fact, and with no other purpose than to inspect, it appears, the sacks of peas were taken from the car by Pittman-Harrison Company and placed in its warehouse, a few yards distant, as a temporary deposit connected with the inspection. If the removal of the peas from the car in order to inspect was as here consented to by the railway company, then it is quite immaterial whether the inspection was made on the platform or in the warehouse near by, so long, as here, as it was not the intention to receive and take final control as possession of the peas. As stated in 2 Hutchinson on Carriers (3d Ed.) § 733:

"The carrier may even permit the consignee, upon depositing with him the charges upon the goods, to take them away, with the understanding that in case they do not answer to the quality of the goods ordered by him he may return them and take back his money."

And it appears further from the evidence that after the inspection was made by Pittman-Harrison Company in the warehouse, Pittman-Harrison Company rejected the shipment because not in accordance with the order, loaded the peas in the original packages back into a car, and notified the railway agent. The railway agent, as he testifies, "accepted them" "when they were loaded back." The agent further testified:

"That car was not by me or under my authority delivered or turned over to Pittman-Harrison Company after it came in for any purpose other than the inspection. * * * If those peas were unloaded in a private warehouse of Pittman-Harrison Company on March 26 and retained there until April 8 or later, I would never relinquish control of them until I received the bill of lading. * * * I take it that the words 'subject to inspection' would allow the privilege of taking it [the shipment] to the warehouse and inspecting it and delivering it back."

[3-5] If, as here evident, it had never lost control over the peas, the railway company could "accept them" as done. It is evident that from the time of placing the car for inspection and until Pittman-Harrison Company notified the railway agent of their rejection of the shipment the railway company, through its agent, was holding dominion over the peas as against Pittman-Harrison Company. As against both Fox Bros. and Pittman-Harrison Company the railway company was still in the relation and under the responsibility of a carrier. And it is evident that Pittman-Harrison Company, in having possession of the peas as they did, did no act and exercised no control or dominion over the peas adverse or contrary to the possession or control of the railway company. It was not the intention of the railway agent and Pittman-Harrison Company to transfer possession and dominion over the peas except for the purpose of inspection, and this fact would negative any intention of "receiving" and "taking possession," as alleged, of the peas by Pittman-Harrison Company in a way inconsistent with the rights of Fox Bros. The railway company would be holding the peas for and in subordination to Fox Bros.' own-

ership. There was no damage or injury to the peas during this time. And the further fact that the peas remained in the warehouse from March 26 until after April 8 would not, in view of all the circumstances, fully establish a conversion of the goods. The contract in this case being for peas of a particular variety, the Pittman-Harrison Company, the vendee, was not obliged to receive and pay for those offered in the car unless they corresponded with the terms of the contract. Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104. The vendee is entitled to make such examination of the goods offered on the existing contract as will enable him to ascertain whether they will fulfill its requirements. 3 Sutherland on Damages (3d Ed.) § 667, p. 1950. The shippers, Fox Bros., even recognized that right, and could make no legal objection thereto. The inspection was delayed, it appears, by reason of the absence of a shipping list. When the shipping list was received from Fox Bros. several days later it was disclosed, it appears, that the peas in the car were not entirely in accordance with the contract or order. Appellants then advised Fox Bros. of the difference between the peas shipped and the original order or contract, and at the same time made a proposition of adjustment of the differences and made tender of money to that end only. This letter is consistent with the plain notice to Fox Bros. that appellants had found on inspection that the contents of the car were not in accordance with the order it had placed with them, and that appellants would accept and pay for such portion of the contents, if Fox Bros. would agree thereto, as did come up to the specifications contained in the order, and that appellants could not and would not accept the entire shipment. When Fox Bros. through their attorney wrote that this was unsatisfactory, appellants promptly reloaded the peas. This could not be called "conversion," because in no way did appellants take the peas and use them for their own use or purpose, or interfere with or claim or exert possession or dominion over them. "Conversion," as defined, "is any distinct act or dominion wrongfully exerted over one's property in denial of his right or inconsistent with it." 2 Cooley (3d Ed.) p. 859; Railway Co. v. Porter, 183 S. W. 98; Crawford v. Thomason, 53 Tex. Civ. App. 561, 117 S. W. 181, and appellants had mere possession of the peas for inspection purposes only under consent of the railway company and under a contract justifying it. It was not wrongful to have possession of the peas for inspection purposes, as here, before paying draft, because authorized by the contract. The cases of Baldwin v. Davidson & Co., 127 S. W. 562, and Crawford v. Thomason, 53 Tex. Civ. App. 561, 117 S. W. 181, are, we think, quite different on the facts from the instant case, and are not applicable. In each of these cases there was a taking and appropriation and dispossession. In the case of M., K. & T. R. Co. v. Seley, 31 Tex. Civ. App. 158, 72 S. W. 89, the railway company parted with the entire control of the property, which was not done in the instant case. It is concluded that the court erred in giving the peremptory instruction.

We have considered the other assignments, and think they should be overruled.

Judgment is reversed, and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes