COX'S BAKERIES OF NORTH DA-
KOTA, INC., Appellant,

v.

HOMART DEVELOPMENT CORPORA-
TION, Appellee.

No. 18389.

Court of Civil Appeals of Texas,
Dallas.

Oct. 24, 1974.

Richard Yetter, El Paso, for appellant.

Dale E. McMahon, Dallas, for appellee.

BATEMAN, Justice.

The appellant Cox's Bakeries of North Dakota, Inc., sued its landlord, Homart Development Corporation, for damages for wrongful eviction and conversion of plaintiff's personal property. The defendant counterclaimed for accrued rent and for the balance due on a promissory note. At the conclusion of the evidence, on motion of defendant the trial court withdrew the case from the jury and rendered judgment that the plaintiff take nothing and that defendant recover on its counterclaim.

■ In determining whether it was proper for the court to withdraw the case from the jury and render judgment, we must view the evidence in the light most favorable to plaintiff, indulging every inference that may properly be drawn from the evidence in plaintiff's favor. White v. White, 141 Tex. 328, 172 S.W.2d 295, 296 (Tex.1943); Nieto v. United States Nat'l Bank, 384 S.W.2d 395, 398 (Tex.Civ.App.— Houston 1964, writ ref'd n. r. e.).

In September 1971 two written lease agreements were executed by defendant as lessor and by plaintiff as lessee covering space for two shops in the Town East Mall in Mesquite, Texas, one shop to be a bakery and the other a delicatessen. We are concerned here primarily with the bakery.

The record reflects that plaintiff had certain difficulties operating a profitable business in this mall. These difficulties were compounded when Mr. Dale Cox, president of the plaintiff corporation, become ill several months prior to the alleged wrongful eviction. Mr. Cox testified that the plaintiff corporation was, and always had been, "a one-man corporation," and that he had not delegated any authority to either one of the other two officers of the corporation during his illness. He explained that he had not realized how serious his illness was until it was too late to take any action.

On May 25, 1972, plaintiff executed a promissory note to the defendant for past due rentals and certain delinquent construction costs in connection with the two leases. During the first week in October 1972 Mr. Cox told a representative of the defendant that he had a serious illness and was going into the Mayo Clinic in Rochester, Minnesota, for care and treatment. Cox talked to defendant's agent, a Mr. McNamara of Chicago, who assured Cox: "We will work it out. Don't worry about it." McNamara also told him to explain the situation to defendant's Dallas manager, James Lambert. Cox did talk to Lambert, and testified that Lambert "wished me luck and said he would work things out when I got back." Cox was in the hospital approximately sixty days. On October 12, 1972, while Cox was in the hospital, defendant notified Cox at his North Dakota address that a certain check issued by plaintiff had been returned due to insufficient funds. This letter did not threaten termination of the lease or of plaintiff's right of possession; it merely asked plaintiff to assure defendant that checks for future payments would clear the bank. Thereafter, on November 7, 1972, the defendant wrote the plaintiff again, saying that three checks had been returned marked "Insufficient Funds," that defendant "elects to terminate your right of possession . . .," and that plaintiff's property on the premises would be sold on November 20, 1972, "[u]nless other arrangements are immediately made . . . ." This letter sets forth certain amounts allegedly in default; however, it is not clear whether those amounts are attributable to the note or to rents under the two leases.

■ The receipt of this letter by plaintiff was followed by certain negotiations by telephone and mail between the attor-

neys for the parties, which did not resolve the dispute. The defendant did not sell plaintiff's furniture, fixtures and other personal property on November 20, 1972, as threatened in the letter of November 7, 1972; but on November 22, 1972, defendant effectively evicted plaintiff from the premises by padlocking the door. Coefficient Foundation v. Kennedy, 188 S.W.2d 694, 697 (Tex.Civ.App.—Fort Worth 1945, no writ).

The provision of the lease agreement giving the defendant the right to terminate plaintiff's right of possession is found in Article 24, the pertinent parts of which are as follows:

> (a) It is agreed that . . . if the rent, additional rent, or any part thereof shall be unpaid for ten (10) days after written notice thereof to Tenant, . . . then Landlord may treat the occurrence . . . as a breach of this lease, and thereupon, at its option, without further notice or demand of any kind to Tenant or any other person, may have, in addition to all other legal or equitable remedies, the following described remedies:
>
> (1) Landlord may elect to terminate this lease . . . .
> (2) Landlord may elect to terminate Tenant's right of possession without termination of this lease . . ., expel or remove Tenant and any other person, firm or corporation who may be occupying or within the premises or any part thereof, and remove any and all property therefrom . . . .

By its third point of error plaintiff complains of the instructed verdict on the grounds that there were issues of fact as to whether it had been wrongfully evicted. Plaintiff relies upon Ada Oil Co. v. Logan, 447 S.W.2d 205, 209 (Tex.Civ. App.—Houston [14th Dist.] 1969, no writ). Logan was the tenant of an automobile service station owned by Ada Oil Company, and sued his landlord for damages for alleged wrongful cancellation of his lease and conversion of certain property on the leased premises. The trial court found that the landlord had waived prompt payment of certain amounts due under the lease and thereby waived the remedy of automatic termination given it by the lease agreement. The court of civil appeals agreed, holding that the question of waiver was one of fact for the trier of the facts, and that the evidence was sufficient to support the trial court's conclusion that the landlord had waived its right to terminate the lease for failure of the tenant to pay for gasoline when payment was due. Although the lease provided for termination without notice upon nonpayment of any amounts due thereunder, the landlord had assured the tenant that prompt payment was not necessary and told him not to worry about the gasoline because his loan application to the landlord would "come through most any time." The court said:

> A waiver takes place where one dispenses with the performance of something which he has a right to demand, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right of his intention to rely upon it. The truth of the testimony and plaintiff's reliance upon such acts and statements testified to by him, were matters for decision of the trial court.

▪▪ We agree with plaintiff that the evidence raises fact issues as to whether the defendant intended to waive its right to terminate the lease or plaintiff's right of possession on plaintiff's failure to pay. If it be found as a fact that the waiver occurred, the tenant's failure to pay the rent promptly would not constitute a breach authorizing termination of the lease agreement unless and until the landlord repudiated the waiver and notified the tenant that thereafter prompt payment would be re-

quired. After waiving in October its right to terminate the tenant's right of possession, defendant will not be permitted to enforce the right to terminate in November without notice of its intention to do so. Theophilakos v. Costello, 54 S.W.2d 203, 205 (Tex.Civ.App.—Waco 1932, no writ). We therefore sustain plaintiff's third point of error.

■ In its fourth point of error plaintiff complains of the instructed verdict on the ground that there were issues of fact concerning the alleged conversion of its property. If defendant's action in excluding plaintiff from the premises by padlocking the door was a wrongful eviction, it was also such an exercise of dominion over plaintiff's property as to constitute in law a conversion. Fenberg v. Fenberg, 307 S.W.2d 139, 141 (Tex.Civ.App.—Amarillo 1957, no writ).

■ There was evidence that after taking possession of the property defendant notified plaintiff that it could come to the rented premises and receive the property. However, if it be found that the conversion had already occurred, plaintiff would be under no obligation to accept the return of its property. Rather, plaintiff would have the right to treat it as having been converted, and to sue for the value of the property so taken. Crawford v. Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181, 184 (Tex.Civ.App.—Fort Worth 1909, writ ref'd).

In an early case this court held that, where the evidence failed to show what disposition, if any, had been made of the tenant's property after possession was taken by the landlord, if the property was not left with the landlord to secure payment of the rent, the landlord would have no right to dispose of it. Under these circumstances, the landlord would be relegated to his remedy of an action at law to foreclose his landlord's lien, and to have the property legally sold to satisfy this lien. If he failed to proceed in a legal manner, but dealt with the property in a manner beyond the scope of his legal rights, then he would be guilty of conversion. Schwulst v. Neely, 50 S.W. 608, 610 (Tex.Civ.App.—Dallas 1899, no writ). Plaintiff's fourth point of error is sustained.

By its fifth point of error the plaintiff contends that the instructed verdict was improper because there was a fact issue as to the amount of damages to which the defendant was entitled, if any, on its counterclaim. We sustain this point with respect to rents.

The judgment on the counterclaim included the sum of $15,525.90 representing the principal and interest due on the aforesaid promissory note signed by plaintiff. Since no complaint is made thereof, that part of the judgment is affirmed.

■ However, with respect to that part of the judgment on the counterclaim for rents, we hold that the evidence presented fact issues which should have been submitted to the jury. Wrongful eviction by the landlord terminates the lease and precludes an action by him for unaccrued rentals. Barret v. Heartfield, 140 S.W.2d 942, 945 (Tex.Civ.App.—Beaumont 1940, writ ref'd). *Accord*, Rohrt v. Kelley Mfg. Co., 162 Tex. 534, 349 S.W.2d 95, 98 (1961); Patteson v. McGee, 350 S.W.2d 241, 243 (Tex.Civ.App.—Eastland 1961, no writ). The judgment includes an award of unaccrued rents for the period from November 22, 1972 to May 18, 1973. Therefore, it is obvious that this part of the judgment, being based upon the trial court's finding that the eviction was not wrongful, cannot stand in the light of our above holding with respect to wrongful eviction.

■ We are not overlooking the provision in the lease to the effect that the tenant's default could give rise to a termination of his right of possession without relieving him of his obligation for unaccrued rentals. However, reliance by the landlord

upon this lease provision cannot be justified unless it be shown that he was not guilty of wrongful eviction, and that he had complied with the requirement of the lease as to ten days notice in writing *prior to termination.*

Accordingly, the fifth point of error is also sustained.

With the exception of that part of the judgment which awards the defendant $15,-525.90 on its counterclaim for the amount due on the promissory note, the judgment is reversed and remanded for trial.

Affirmed in part and reversed and remanded in part.