The International & Great Northern Railway Company
v. The Dimmit County Pasture Company.

No. 47.

1. **Common Carriers.** — The liability of a railway company as a common carrier attaches when property is delivered to and accepted by it for transportation. Article 283, Revised Statutes, providing that the trip or voyage shall be considered as having commenced from the time of the signing of the bill of lading, and the liability of the common carrier shall attach as at common law from and after such signing, does not change the common law rule.

2. **Same.**—Where a railway company promises to provide cars at a certain time, in which to ship property, it would be liable for its failure to have them at the time promised for a breach of contract as an individual, and not as a common carrier.

3. **Measure of Damages.**—Where damage is claimed against a railway company on account of a delay of one day in shipping cattle, after they are delivered to it for shipment, and for failure to properly water and feed them, whereby they were injured. *Held*, that the measure of damages would be the difference in the market value if they had arrived at their destination in due time and in good condition, and the price they sold for one day later and in their damaged condition.

4. **Hearsay Evidence—Value.**—Testimony of a witness as to the market value of cattle at a certain point, based upon daily reports of the market at that point, is not hearsay evidence.

Appeal from La Salle. Tried below before Hon. D. P. Marr.

*Barnard & Green*, for appellant.— 1. A railroad company is not liable as a common carrier until and after signing of bill of lading. Rev. Stats., arts. 281, 283, 4258b, sec. 8, 17th Leg., Spec. Sess., p. 35; Railway v. Nicholson, 61 Texas, 495; Railway v. McCorquodale, 71 Texas, 46.

Would be liable as an individual for breach of contract to furnish cars

at a certain time, and not as a common carrier. Same authorities as above cited.

2. Appellant's liability not having attached as a common carrier until the signing of the bill of lading, it was only liable as a warehouseman after appellee's cattle were placed in its pens, and not bound to feed and water them. Rev. Stats., art. 281; Railway v. Morse, 1 W. & W. C. C., secs. 411, 414; Railway v. Capps, 2 Willson's C. C., sec. 36.

*Lane & Mayfield*, for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee sued the railroad company for $936.50 damages to 349 head of cattle shipped from Cotulla to Chicago. The damage is alleged to have taken place by twenty-four hours detention at the shipping point and delay on the route. There are two counts, one for damages en route, declaring on the written contract, and the other for delay at Cotulla before the contract was signed.

Defendant answered by general and special exceptions and general denial, and also pleaded settlement and the stipulations in a written contract.

There was a verdict for plaintiff for $432.50, with 8 per cent interest from date of sale of the cattle in Chicago; and the interest having been computed from that time to date of trial, judgment was rendered for that amount, with 8 per cent interest from last said date.

It was in proof, that on March 30, 1888, the cattle were brought to Cotulla and placed in the shipping pens of defendant, and were locked up by its agent. The cars in which to ship the cattle had been ordered for the date specified, and the agent of defendant told one witness from time to time that the cars would arrive in a short time, but they failed to come, and the cattle did not get off until the next day. Rachal, a witness for plaintiff, swore that he tried to water the cattle while in the pens, but the supply was insufficient. The cattle were badly injured by the delay and want of food and water. The damage at Cotulla was laid at $436.50, or $1.25 per head. The witness swore that the cattle were damaged from $1.25 to $2.50 per head before they were started. The contract was not signed until at the time the cattle were loaded. There was no proof to sustain a verdict for damages occurring to the cattle while on defendant's line en route to Chicago, and the verdict must be sustained, if at all, upon testimony of damage occurring to the cattle at Cotulla, while in possession of defendant, and before the signing of the contract.

The proof is clear that the cattle had been in possession of appellant for twenty-four hours before they were started on their journey; and this not because the railroad company had not had sufficient time in which to procure cars, for it had set the day on which it would have the cars

in readiness, and on the date fixed appellee brought its cattle to the shipping pens of appellant, and the agent of appellant emphasized his possession by immediately locking the gates and taking exclusive possession of the property.

We are of the opinion that the six days notice allowed in the statute to procure cars by railway companies is a safeguard given to them to prevent being pressed for time in obtaining cars for the transportation of property, and being a privilege granted to them, they can waive it at any time.

However, there is no evidence that shows that defendant did not have the full six days notice, and this was a matter of defense to be proved by defendant.

The liability of a railway company as a common carrier attaches whenever the shipper has done all that is required of him to prepare his property for shipment, and has delivered the same to the railway company and it has been accepted. In other words, whenever all the arrangements for transportation have been made by the would-be shipper, and there is nothing to do but to transport the property to its destination, then the liability of the railway company attaches as a carrier. So long as anything further is to be done or orders to be given by the owner to enable the company to perform its duty, it would be a bailee of a different character than as carrier, and the question of ordinary care on the part of the company might become a prime factor in the determination of the suit. In the latter case the depository or warehouseman would only be liable for negligence or want of ordinary care of the property, and the burden would be on the plaintiff as to negligence. In the other case, the onus probandi as to due care would be upon the defendant whenever the damage is proved. 2 Rorer on Rys., 1279, 1280; Railway v. McCarty, 82 Texas, 608.

It is unnecessary under the facts in this case to discuss the question of delivery and acceptance, as they are uncontroverted facts, the only contention being that defendant is only liable as a warehouseman, if at all. Article 283 of the Revised Statutes of Texas provides, that the trip or voyage shall be considered as having commenced from the time of the signing of the bill of lading, and the liability of the common carrier shall attach as at common law from after such signing. At common law the liability as carrier began whenever the goods were delivered to the carrier for immediate transportation; and our Supreme Court, in passing upon the statute above cited, holds that the statute has not changed the common law rule. Railway v. Hall, 64 Texas, 615; Railway v. Trawick, 80 Texas, 274.

The cattle in this case were turned over to and accepted by defendant for immediate shipment, and it was liable for damages to them as a carrier from the time of delivery. There is an apparent conflict between the authorities above quoted and the cases of Railway v. Nicholson, 61

Texas, 495, and Railway v. McCorquodale, 71 Texas, 46; but in those two cases the railway had contracted to receive and ship the cattle at certain dates, but refused to receive them when presented for shipment, and it was held that the railways were responsible as mere individuals for breach of their contract.   In the case we are considering there was an actual delivery to and acceptance by the railway company, and we are of the opinion that its liability as a common carrier as under the common law began at that time.   The trial court did not err in refusing the instructions asked on this subject by appellant.

Where goods are injured on their way to point of destination, the measure of damages is, as a general rule, the difference between the market value of the goods in their damaged condition at point of delivery, and what the fair market value thereof would have been at the same time and place if they had been delivered in a sound condition.   Appellant contends in his brief that the above rule was disregarded by the trial court.

The charge objected to is as follows:  " If defendant failed to do this" (that is, properly feed and water the cattle) " after it had received and accepted the cattle for transportation, if it did so, then, in the absence of a special contract relieving it from such duty, if the cattle were damaged and injured while under the control of the defendant at Cotulla, on account of the failure of defendant to properly feed and water them while in the pens of defendant at Cotulla, then the defendant would be liable to the plaintiff for the amount of such damage—that is, for the diminution, if any, in the value of said cattle at Cotulla, with 8 per cent interest from date of injury."

We are of the opinion, that the measure of damages as fixed by the court is in contravention of the rule herein before enunciated; and unless there is sufficient uncontradicted proof to show that defendant has not been injured by the erroneous charge, it would be reversible error.   In this connection, it may be said, we are of the opinion that the testimony of the witness E. R. Rachal, based upon daily market reports sent out from Chicago, was properly admitted, such being received in the course of his business.  It was not what could be denominated hearsay evidence, because it is an opinion based on market reports that are public, and upon which, in a commercial country like ours, men are acting every day in affairs of business of the greatest moment.   The vast crops of cotton produced in the South are bought and sold upon quotations daily telegraphed from money centers, and they are facts as clearly definite and determined as though the witness were in New York and Liverpool.   Even if he were in these commercial centers, the possibilities are that he could only obtain a knowledge of the state of the market by consulting newspaper reports or bulletin boards in exchanges.   A knowledge gained through market reports is different from information received from persons; in one case

it comes from a public authentic source, in the other it is hearsay and unreliable. Railway v. Maddox, 75 Texas, 301; Railway v. Skellie, 12 S. E. Rep., 1017; Laws. on Exp. Ev., 439; 1 Whart. on Ev., secs. 255, 449.

Rachal swears, that if the cattle had been delivered in Chicago in good condition, the cows should have brought $2.75, instead of $2.10 per 100 pounds that they sold for; steers $3.25, instead of $2.85, the price they brought; bulls $2.50, instead of $2.25 that they brought; and calves would have been worth $7.50, instead of $4.50, for which they sold. There were 189 cows, 44 steers, and 89 calves. Now, unless this testimony is contradicted, a simple calculation will show that the damages to the cattle were largely in excess of the verdict of the jury.

The only other testimony on the subject of the value of the cattle is an excerpt taken from the "Drover's Journal," showing the number and value of Texas cattle sold in Chicago on the 7th day of April, 1888, the day on which appellant's cattle were sold. This report shows all the cattle sold on that day except 25 head must have been, as contended by appellant in his brief, appellee's cattle, and of course the value of these, damaged, can not contradict the market reports sent out on that date. Appellant introduced testimony as to value of cattle sold on 4th, 5th, and 7th of April, but does not introduce testimony as to value on April 6. If the cattle had been shipped when delivered to appellant, it is clear they would have been put on the market in Chicago on the 6th instead of the 7th. As it would be inequitable and unjust to plaintiff to take the value of his damaged cattle as a criterion by which to fix the market value of cattle in Chicago, suppose we take the quotations of the 5th, as offered in evidence by appellant, and ascertain, if we can, what the loss to appellee, if any, would have been. We find from the return of sales that the cows weighed 138,450 pounds, or about 732 pounds each, and that they sold at $2.10 per 100 pounds. On the 5th of April 140 cows, weighing less than plaintiff's cows, sold at $2.20 per 100 pounds. As the true value of the cows on the 6th, we have a loss sustained by plaintiff of $138.45; the amount of 25 cents per 100 pounds damage on the bulls is uncontradicted, making an aggregate sum of $55.60; and there is nothing in any of the testimony to contradict the testimony as to the calves being damaged $3 per head, or in the aggregate $267.05. The sums added together give the sum of $461.05, nearly $30 more than plaintiff recovered. It will be seen that the damage to the 44 steers is not included in this calculation. If the damage to them is included, the amount of the damages will be $598.93, three-fourths of which sum, the damages sustained on defendant's road, gives the sum of $449.19, being more than the verdict. We therefore conclude that the charge of the court as to the measure of damages worked no injury or damage to appellant, and it has no cause to complain.

Applying the measure given by the lower court, or the proper one, and

appellee has not received greater damages than it proved up by uncontroverted testimony.

It was proper to allow interest on the damages from the time they accrued to date of judgment; and there was no error in rendering judgment for principal and interest to date of judgment, and then in providing that this combined sum of principal and interest should bear legal interest from date of judgment. Railway v. Jackson, 62 Texas, 212; Railway v. Greathouse, 82 Texas, 111; Heidenheimer v. Johnson, 76 Texas, 206.

None of the assignments of error are well taken, and the judgment is affirmed.

*Affirmed.*

Delivered November 1, 1893.