**Don J. LIGON et ux., Appellants,**

**v.**

**E. F. HUTTON & COMPANY, Appellee.**

**No. 17074.**

Court of Civil Appeals of Texas.

Dallas.

April 19, 1968.

Rehearing Denied May 17, 1968.

Wm. Andress, Jr., Andress & Woodgate, Dallas, for appellants.

Norman R. Rogers, of Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted for it.

Suit was filed in the name of the appellee E. F. Hutton & Company, hereinafter called Hutton, against the appellants Don J. Ligon and wife to recover the value of 250 shares of the capital stock of Texas National Petroleum Company, which appellants were alleged to have converted. The case was submitted to the court on stipulated facts, and the court, sitting without a

jury, rendered judgment for Hutton for $1,812.50, plus interest thereon at 6 per cent per annum from October 19, 1962 to date of judgment, amounting to $528.85, or a total of $2,341.35, with interest thereon from date of judgment. We affirm.

The controversy herein seems to have arisen from dealings involving two corporations bearing somewhat similar names. They are Tex N Petroleum Corporation and Texas National Petroleum Company. On or about December 21, 1953 Ligon acquired 250 shares of stock in Tex N Petroleum Corporation. On or about January 25, 1962 Ligon delivered these and other stock certificates to Hutton with authority to have them transferred into its own name, but for appellants' account.

Hutton sent to appellants a statement for the month of Februrary 1962 listing, among other stocks held in their account, 250 shares of "Tex National Petrolm". Hutton's Dallas office discovered that the statement was in error in listing "Tex National Petrolm", which should have been listed as "Tex N Petroleum Corporation". The Dallas office notified the New York office of the error, and the statement dated March 29, 1962 showed appellants' account to be "long" 250 shares of "Tex N Petroleum Corp" and "short" 250 shares of "Tex National Petrolm". Appellants did not communicate with Hutton concerning these statements or the receipt which Hutton had given them describing the stock as "Tex N Petroleum Corporation". On or about April 2, 1962 appellants instructed Hutton by letter to transfer certain stocks to Bache & Company for their account, including 250 shares of "Texas National Petroleum." Thereafter, and before the stocks were actually transferred, appellants received the March 29, 1962 statement. On April 13, 1962 Hutton transferred to Bache & Company, for the account of appellants, the stocks listed in appellants' letter of April 2, 1962, and the order of transference included 250 shares of "Texas Natl Pete". A copy of this was mailed to Ligon by Hutton, but Ligon did not communicate with Hutton concerning the same. Hutton sent appellants a statement dated April 26, 1962 showing that 250 shares of "Tex National Petrolm" were delivered out on April 13, 1962 and that there was a balance in the account of 250 shares of "Tex N Petroleum Corp". This statement was mailed to Ligon, but he did not communicate with Hutton concerning it.

On May 3, 1962 appellants instructed Bache & Company to sell the 250 shares of "Texas National Petroleum". Pursuant thereto, Bache & Company sold 250 shares of Texas National Petroleum Company stock for appellants on May 7, 1962, the notification to appellants describing the stock as 250 shares of "Texas Nationl Ptm Co."

On May 3, 1962 Hutton sent to appellants two memorandum statements, one of which said: "Examination of your statement has disclosed error(s) for which the following correction will appear on your next statement. RECEIVE 250 Tex Natl Petroleum Corp." The other read: "Examination of your statement has disclosed error(s) for which the following correction will appear on your next statement. DELIVER 250 Tex National Petroleum." Ligon did not communicate with Hutton concerning either of said statements. Shortly thereafter Hutton informed Bache & Company that the 250 shares of Texas National Petroleum Company stock had been delivered in error and that 250 shares of Tex N Petroleum Corporation stock should have been delivered. Hutton requested the return of the 250 shares of Texas National Petroleum Company stock and offered to send Bache for appellants' account 250 shares of Tex N Petroleum Corporation stock. Bache replied that it could not return the 250 shares of Texas National Petroleum Company stock because its customer, Ligon, said that he did not own Tex N Petroleum Corporation stock but owned Texas National Petroleum Company stock. Hutton thereafter requested Ligon on several occasions to return the 250 shares of Texas National Petroleum Company stock,

or the value thereof, and offered to deliver to him 250 shares of Tex N Petroleum Corporation stock. Ligon refused. On October 19, 1962 Hutton purchased 250 shares of Texas National Petroleum Company stock for its own account at the market price of $1,812.50, and on the same date transferred to Bache & Company for appellants' account 250 shares of Tex N Petroleum Corporation stock, mailing to appellants a notice of the delivery of said stock.

Hutton had been engaged in the stock brokerage business for many years, with many offices throughout the United States, and was a member of the New York Stock Exchange as well as other stock exchanges. Ligon had been buying and selling stocks for more than thirty years and had dealt with at least five large brokerage firms. He always relied upon the accuracy of such firms and had never had one of them by its own mistake substitute stocks so similar in name as to be confusing to him also. There is no connection between Tex N Petroleum Corporation and Texas National Petroleum Company.

Appellants' first point of error on appeal is: "Hutton cannot recover against Ligon for damages suffered as a result of its own unilateral mistake without any action or participation on Ligon's part." It is quite obvious from the facts stipulated that the loss sustained by Hutton was due to a chain of events stemming from its own mistake in listing, in its monthly statement to appellants, corporate stock which appellants did not own. So far as the record before us shows, the mistake was an entirely innocent one. When it discovered its mistake, it endeavored to rectify the same by requesting appellants to return the stock which had been delivered and offering to deliver to appellants the stock which they owned.

■ Appellants argue, however, that Hutton must suffer the consequence of its own mistake and is not entitled to recover because it did not come into court with clean hands. This reference to a time-honored equitable maxim has no proper application here and presents no defense to this common-law action. "The maxim that he who comes into equity must come with clean hands is strictly an equitable doctrine, and does not apply in a suit that is not an equitable proceeding." 22 Tex.Jur. 2d, Equity, § 46, p. 593. Moreover, one who by innocent mistake delivers his property to another—no matter how stupid or negligent he may have been in doing so—cannot be said to have such unclean hands as to bar him from demanding the return of his property or its value. The doctrine is applied to one whose own conduct in connection with the same matter or transaction has been unconscientious or unjust, or marked by a want of good faith, or has violated principles of equity and righteous dealing. 22 Tex.Jur.2d, Equity, § 45, p. 592. Hutton's conduct is not shown to have been subject to any of these criticisms.

Even if this were a case in equity, it has been held that equity will not "permit just rights to be lost through mistake or ignorance of a fact when the relief sought cannot operate to the prejudice of third persons." 38 Tex.Jur.2d, Mistake, § 3, p. 740.

■ It is undisputed that appellants sold stock which had come into their hands as the result of an innocent mistake on the part of appellee. A compliance by them with appellee's request for the return of the stock would have cost them nothing, but instead of returning the stock to appellee they ordered it sold, thus making it impossible for appellee to rescind the transfer. Regardless of whether they sold the stock without knowledge that it had been transferred to them or their agent by mistake, or whether they acted with full knowledge of the true facts, they are not entitled to such a windfall but are liable to appellee for the value of the stock so sold. In no event, and under no sound theory, can they escape such liability by asserting that Hutton's loss was due wholly to its unilateral mistake, for if we give appel-

lants the benefit of the doubt and decline to find that they consciously sold property of another and pocketed the proceeds we must necessarily find that they did what they did under the mistaken notion that they were selling their own property. If the latter be true, then the entire transaction must be said to have been the result of mutual mistake.

■ Appellants also take the position that the delivery to them or their agent of the stock certificate indorsed by Hutton *ipso facto* constituted them the owners thereof by virtue of Vernon's Ann.Civ.St., Art. 1302–6.02, then in effect. This contention is also overruled. The statute merely sets out the exclusive method by which title to a stock certificate and to the shares represented thereby *can* be transferred; it does not provide that all transfers made in the prescribed manner effectively transfer title, regardless of whether the transfer was induced by fraud or mistake. This interpretation is consistent with Art. 1302–6.08, V.A.C.S., which provides that if indorsement or delivery of a certificate is procured by fraud or duress *or is made under such mistake as to make the indorsement or delivery inequitable,* the certificate may be reclaimed and the transfer rescinded unless it has been transferred to an innocent purchaser for value.

"The gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property which he is entitled to possess." 18 Am.Jur.2d, Conversion, § 25, p. 170.

■ Appellants also contend that to affirm this judgment would be to permit the plaintiff to recover for its own negligence, and that "any contributory negligence bars recovery by a plaintiff." Especially is this true, say the appellants, when it is considered how blameless and free of negligence they were. We do not agree with this contention. This is not a suit involving negligence. It is a conversion suit, and in such a case it is no defense that the defendant was not negligent, or that the plaintiff was negligent, or that the defendant acquired the plaintiff's property through the plaintiff's unilateral mistake, or that the defendant acted in complete innocence and perfect good faith. This has been the rule in Texas at least since 1884, when Sandford v. Wilson, 2 Willson Civ. Cases 188, was decided. The court there said:

"Trover may be maintained against one who sells another property, although the defendant came into the possession lawfully, and sells it believing it to be his own."

See also 18 Am.Jur.2d, Conversion, §§ 7 and 8, pp. 162, 163; Ferrous Products Co. v. Gulf States Trading Co., 323 S.W.2d 292 (Tex.Civ.App., Houston 1959, affirmed 160 Tex. 399, 332 S.W.2d 310); Powell v. Forest Oil Corporation, 392 S.W.2d 549 (Tex.Civ.App., Texarkana 1965, no writ); Kenyon v. Bender, 174 S.W.2d 110 (Tex. Civ.App., Beaumont 1943, writ ref'd w.o. m.); Pecos & N. T. Ry. Co. v. Porter, 183 S.W. 98 (Tex.Civ.App., Amarillo 1916, writ ref'd); Fenley v. Ogletree, 277 S.W. 2d 135 (Tex.Civ.App., Beaumont 1955, writ ref'd n.r.e.); Crawford v. Thomason, 53 Tex.Civ.App. 561, 117 S.W. 181 (Fort Worth 1909, writ ref'd).

Appellants' first point of error is overruled.

■ By their second point of error on appeal, the appellants · complain because the suit was brought in Hutton's name and not in that of the insurance company which had paid its claim in full and had become assignee and owner thereof. This point is without merit. Hutton did not bring the suit for its own account or benefit; the suit was brought by Fidelity & Casualty Company of New York in Hutton's name, as it was entitled to do under the doctrine of subrogation.

This right is recognized by many Texas authorities, including Jaskolski v. Jahn, 410 S.W.2d 858 (Tex.Civ.App., Waco 1966, no

writ); Gulf Ins. Co. v. White, 242 S.W.2d 663 (Tex.Civ.App., Dallas 1951, no writ); Frye v. Janow, 212 S.W.2d 883 (Tex.Civ. App., Dallas 1948, no writ); Hudson Underwriters Agency of Franklin Fire Ins. Co. v. Ablon, 203 S.W.2d 584 (Tex.Civ. App., Dallas 1947, no writ). Appellants' second point of error is overruled.

Under their third point of error the appellants contend that in no event could they be properly held liable for more than the amount they received for the stock when they sold it. They sold the stock at the market price of $1,656.25. When Hutton replaced the stock on the open market several months later, it paid $1,812.50, which was then the market price. Appellants contend that the additional damage ($156.25) suffered by Hutton was due to Hutton's own "aggravation" of the damages by its lack of diligence in replacing the stock.

What we are concerned with here is, not mitigation or aggravation of damages, but the correct measure of damages to be applied in this particular situation. The rules are concisely stated by the Supreme Court in DeShazo v. Wool Growers Central Storage Co., 139 Tex. 143, 162 S.W.2d 401, 404 (1942):

"It is the general rule that where one person converts the property of another and appropriates it to his own use, or sells or otherwise disposes of it, the measure of damages is the value of the property converted at the time of such conversion, with legal interest. On the other hand, it is the law that where the conversion is attended with fraud, willful wrong, or gross negligence, and the property converted is of changing or fluctuating value, the measure of damages is the highest market value of such property between the date of conversion and the filing of the suit."

See also 14 Tex.Jur.2d, Conversion, § 27, p. 32, and Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904, 907 (1942), where the earlier decision in DeShazo and the case of Early-Foster Co. v. Mid-Tex Oil Mills, 208 S.W. 224 (Tex. Civ.App., Austin 1918, writ ref'd) are cited with approval.

The question, then, is whether the value at the time of conversion is the measure of damages, or whether there has been such fraud, willful wrong, or gross negligence as to justify the higher measure. The trial court applied the higher measure and we think the undisputed facts amply support the ruling.

Appellants direct our attention to the seven different abbreviations used by Hutton in designating these two corporations. They imply in their brief that this was so confusing to them that they did not realize that they were selling stock which they did not own. However, they do not actually state that they were confused to that extent, and there is no evidence or stipulation in the record to that effect.

The undisputed facts show that appellants had owned 250 shares of Tex N Petroleum Corporation for more than eight years before the transactions involved herein occurred. Nevertheless, they ordered Hutton on April 2, 1962 to deliver to Bache & Company "250 shares Texas National Petroleum." The stock had not been so designated in either the February or the March statement. They listed the stock as "Tex National Petrolm", and in the March statement the item immediately preceding that designation showed the stock which appellants really owned as "Tex N Petroleum Corp." One would think that an ordinarily prudent person who had dealt in the stock market with several different stock brokers for thirty years would at least have had his curiosity aroused by those entries in the statement, but Ligon did not communicate with Hutton concerning the same. Moreover, in May 1962 Hutton sent Ligon two memorandum statements calling attention to the error which it had made, but still Ligon failed to communicate with Hutton about it. Further still, even after May 3, 1962, Hutton requested Ligon on

several occasions to return the 250 shares of Texas National Petroleum Company stock or the value thereof, and Ligon refused to comply and apparently maintained the same position then that he does on this appeal, namely, that because of Hutton's "series of stupid errors" and "sloppy inefficiency" it must suffer all the consequences thereof, regardless of whether or how much appellants might be enriched thereby. This attitude, urged by appellants as a proper defense, is not only untenable under the law, but was sufficient to warrant the trial court in believing that appellants' failure to return the converted stock or the value thereof, to have been at least willful, if not fraudulent, thus making applicable the higher measure of damages spoken of in the DeShazo opinion. Accordingly, the third point of error is overruled.

By their fourth point of error, the appellants complain of the inclusion in the judgment of interest on interest. They do not question the awarding of interest at the legal rate from the date of conversion to the date of the judgment, but complain of the allowance of interest after the date of judgment on that part of the judgment which consists of interest. They say that interest is thus compounded erroneously.

We see no merit in this point. The interest from the date of conversion to the date of judgment is admittedly allowable and is included in the judgment as a part of the plaintiff's damages. The amount of the judgment having been thus computed, the rate of interest thereon is governed by Art. 5069–1.05, V.A.C.S., which provides: "All judgments of the courts of this State shall bear interest at the rate of six percent per annum from and after the date of the judgment, * * *."

■ In our opinion, the awarding of interest on the entire judgment from date of judgment was entirely proper. This seems to be in conflict, however, with the decision of the Waco Court of Civil Appeals in McDaniel v. Miller, 317 S.W.2d 546, 549 (Tex.Civ.App., Waco 1958, no writ). That case, holding to the contrary, was cited with approval and followed as the Texas law in Brooklyn Union Gas Co. v. Transcontinental Gas Pipe Line Corp., 201 F.Supp. 679, 683, affirmed in Socony Mobil Oil Co. v. Brooklyn Union Gas Co., 299 F.2d 692, 696 (5th Cir.1962), cert. den. 371 U.S. 887, 83 S.Ct. 185, 9 L.Ed.2d 121.

We observe that McDaniel v. Miller, supra, had no writ history and that neither it nor the federal case citing it has been cited in any other reported Texas opinion as authority on this point. They are contrary to the text in 33 Tex.Jur.2d, Interest, § 10, p. 77. We decline to follow them, preferring to follow International & G.N.R. Co. v. Dimmitt County Pasture Co., 5 Tex.Civ. App. 186, 23 S.W. 754, 756 (San Antonio 1893, no writ), wherein it was said:

"It was proper to allow interest on the damages from the time they accrued to date of judgment, and there was no error in rendering judgment for principal and interest to date of judgment, and then in providing that this combined sum of principal and interest should bear legal interest from date of judgment. [Houston & T. C.] Railway Co. v. Jackson, 62 Tex. [209] 212; [Fort Worth & D.C.] Railway Co. v. Greathouse, 82 Tex. [104] 111, 17 S.W.Rep. 834; Heidenheimer v. Johnson, 76 Tex. [200] 206, 13 S.W.Rep. 46."

Appellants' fourth point of error is overruled.

In their fifth point of error the appellants complain that the trial court did not file conclusions of law setting forth its theory and basis of the judgment sufficiently to enable appellants to present their appeal. We find no basis for reversal in this point.

When appellants requested findings of fact and conclusions of law pursuant to Rule 296, Vernon's Texas Rules of Civil Procedure, the court found the facts to be as stipulated by the parties, adopting the

entire stipulation by reference, and filed three conclusions of law: (1) The Fidelity & Casualty Company of New York was entitled to bring this suit in the name of its insured, E. F. Hutton & Company; (2) the plaintiff suffered damages in the principal sum of $1,812.50 by reason of the conversion of 250 shares of Texas National Petroleum Company stock by the defendants; and (3) plaintiff is entitled to recover from the defendants, jointly and severally, the sum of $1,812.50, with interest as above stated. Although notified in writing that the statement did not contain conclusions of law but was merely a repetition of the judgment, the trial court declined to file further conclusions.

In our opinion, the stipulated and undisputed facts presented no complicated or intricate questions of law, and the conclusions of law filed by the trial court constituted sufficient compliance with the rules. As stated in Jamison Cold Storage Door Co. v. Brown, 218 S.W.2d 883, 887 (Tex. Civ.App., Fort Worth 1949, writ ref'd n.r. e.): "He is not required to set out in minute legal detail his every reason and theory for having reached the legal conclusion expressed."

We observe that appellants do not suggest what additional legal points should have been included in additional conclusions of law. In any event, we think the record affirmatively shows that appellants have suffered no injury as a result of the trial court's failure to file additional conclusions of law. That being true, reversible error is not shown. Rule 434, T.R.C. P.; Wagner v. Riske, 142 Tex. 337, 178 S. W.2d 117, 120 (1944); Ryan v. Winegardner, 348 S.W.2d 284 (Tex.Civ.App., Eastland 1961, no writ); McClendon v. McClendon, 289 S.W.2d 640, 644 (Tex. Civ.App., Fort Worth 1956, no writ); Adolphus Garage v. Nelson, 387 S.W.2d 472, 476 (Tex.Civ.App., Tyler 1965, no writ); Becker v. Schneider, 335 S.W.2d 850, 853 (Tex.Civ.App., Austin 1960, no writ). Accordingly, appellants' fifth point of error is overruled.

The record before us fails to disclose any reversible error, and the judgment is therefore

Affirmed.