R. P. FULLER et al., Plaintiffs,

v.

PHILLIPS PETROLEUM COMPANY, Defendant.

Civ. A. No. CA–5–74–140.

United States District Court,
N. D. Texas,
Lubbock Division.

Feb. 20, 1976.

As Amended Feb. 24, 1976.

Supplemental Opinion March 9, 1976.

Aubrey J. Fouts, Key, Carr, Evans & Fouts, Lubbock, Tex., for plaintiffs.

T. L. Cubbage II, Jack Ritchie, Amarillo, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The above case came on to be tried before the court without a jury on the 28th day of January, 1976, with the attorney for each party appearing and announcing ready for trial. After hearing and considering the evidence, the pleadings, the arguments and briefs of counsel, the court files this memorandum opinion which shall constitute the court's findings of fact and conclusions of law. Additionally, the court incorporates as a part of the findings of fact in this case the factual admissions contained in the pre-trial order which is here referred to for all pertinent purposes.

Phillips Petroleum Company (Phillips) is engaged, among other things, in the purchase, transportation, and sale of natural and casinghead gas. The plaintiffs (Fullers) were, during the time pertinent to this case, engaged in the production and sale of oil and gas from certain mineral leases owned and operated by them in Moore and Hutchinson Counties of Texas. The casinghead gas so produced by Fullers was sold to Phillips pursuant to certain contracts which provided, among other things, that the amount payable under the contracts would be computed as a percentage of the price which Phillips sold gas to third parties. The price of such gas sold by Phillips to pipeline companies for interstate transportation was controlled by the Federal Power Commission (FPC) under its authority to fix just and reasonable rates.

Phillips filed numerous proposed price increases with the FPC, which originally were suspended by the Commission but subsequently put into effect by Phillips subject to refund. It can be seen that if the FPC subsequently granted only part of the requested price increase, then Phillips was required to refund part of the sales proceeds it had received to the purchasers. These proceeds are known as "refundable" moneys; those proceeds obtained as a result of the approved portion of the price increase are known as "sustainable" moneys and were to be paid by Phillips to the producers. Pending FPC approval of the price increase, Phillips did not remit any of the moneys attributable to the proposed price increases to the percentage of proceeds contract sellers because it had no way of knowing what portion of the sales proceeds would be "refundable" and what portion would be "sustainable."

The FPC ultimately approved a portion of the price increases requested by Phillips and established refund requirements for those increases that were not approved. The ruling by FPC was affirmed by the Ninth Circuit Court of Appeals in *People of the State of California v. Federal Power Commission*, 466 F.2d 974 (9th Cir. 1972), and this decision became final on October 28, 1972.

Various trade journals and "rumors" made the Fullers aware of the payments which had been made to Phillips pursuant to the prospective rate increase. As a result Mr. Fuller made inquiry of Phillips on several occasions as to whether or not any funds were being held by Phillips in escrow for him, and, if so, how much. Among these inquiries was a letter dated May 7, 1965 and a subsequent letter from Mr. Fuller to Phillips on August 25, 1969. His inquiries, including several by telephone, did not reveal the information that he was seeking and Mr. Fuller felt that these inquiries were being evaded by Phillips. Later he employed an attorney to visit the home office of Phillips and determine the status

of any moneys held by Phillips as a result of the above sales. As a consequence of this visit, the attorney worked out an indemnity agreement with Phillips whereby Phillips agreed to pay to the Fullers the entire amount of the proceeds received by Phillips from the sale of Fullers' gas. The indemnity agreements were four in number, dated March 5, 1970, May 27, 1971, June 3, 1971, and June 9, 1971, and all of them predated the date that the FPC order became final. The indemnity agreements provided that the moneys would be paid to Fullers and if the ultimate decision in the rate matter before FPC required a refund of all or any portion thereof, then Fullers would refund same to Phillips together with interest. It should be noted that if Phillips were required to refund moneys to its purchasers then Phillips would also be required to pay interest to the purchasers on the moneys refunded for the length of time same were held by Phillips. The Fullers were required to obtain a letter of credit from a bank as security and this was done.

As a result of the final FPC decision, the Fullers were required to refund to Phillips a sum in excess of $100,000 together with interest thereon and were entitled to keep and did keep the "sustainable" moneys. The total of both the "sustainable" and "refundable" and "outside 586" (not involved in this suit) moneys was $281,459.93.

During the period of time that Mr. R. P. Fuller discussed these matters with Phillips, the moneys held by Phillips were always referred to by Phillips' attorneys as "escrow" or "suspense." There was not any discussion between the Fullers and Phillips as to whether or not Phillips would be required to pay interest on the "sustainable" moneys and the indemnity agreement contracts are silent on the question of the interest to be paid by Phillips to Fullers.

It was in October of 1974 that Phillips demanded the refund of the "refundable" moneys and Mr. Fuller learned for the first time that Phillips had used the moneys for its general corporate purposes. However there was a bookkeeping entry on Phillips' records showing the liability of Phillips to repay these sums either to its purchaser or to pay the same to the Fullers. But, in fact, the moneys were kept in Phillips' general fund. Mr. Fuller stated that he learned that Phillips was using this money for its general corporate purposes in a conversation with Mr. C. A. Roberts, Phillips' Gas Royalty Administrator. This conversation was in October 1974, after the FPC decision became final, and at that time he made a demand that he be paid interest on the "sustainable" funds for the period of time that Phillips held these funds.

This suit is one for interest claimed by the Fullers to be due them on the "sustainable" moneys held by Phillips up to the time that they were paid to the Fullers. The amounts of interest, under the various possibilities, have been stipulated and agreed to between the parties in the pre-trial order on page 22. Fullers are claiming interest from the date that the "sustainable" moneys were received by Phillips until the date that the money was actually paid to Fullers by the authority of the United States Court of Appeals for the Fifth Circuit in *Phillips Petroleum Company v. Adams*, 513 F.2d 355 (5th Cir. 1975). In addition, the Fullers claim that they are entitled to be paid "interest on interest," that is, for all interest that was due when the money was paid to them, Fullers claim interest on that sum until the date of this judgment and thereafter until paid.

Resisting the payment of any interest, Phillips claims that even under the *Adams* case, *supra*, it should not be required to pay interest after the date of the indemnity agreements because Phillips lost the reasonable free use of the moneys in question at the time it entered into the indemnity agreements. Further, Phillips has pled waiver and novation as defenses to the payment of any interest.

In the absence of a defense such as waiver or novation, it appears to the court that the Fullers are entitled to the

payment of interest at least until such time as Phillips had lost the reasonable free use of the money. The equitable considerations which the Fifth Circuit set forth in *Adams, supra,* and those which exist in this case are the same. The one factual difference is that in this case the Fullers got their money under an indemnity agreement while in *Adams* the money was paid into the registry of the court. But this difference does not relieve Phillips of the payment of interest on moneys it held and used during the period in question for its own general corporate purposes.

It appears to the court that the interest on the principal sum of the "sustainable" moneys should terminate as of the respective date of the indemnity agreements above set forth. These were agreements on the part of Phillips to pay to the Fullers the "sustainable" moneys, as soon as the amount could be conveniently computed, and it was on the respective dates of the indemnity agreements that Phillips lost the reasonable free use of these moneys. In *Adams,* the court terminated interest as of the date that Phillips made the unconditional tender of the funds into the court registry, even though the funds were not actually paid until some months afterward. The rationale of the *Adams* court was that "once a stakeholder makes an unconditional offer to give up possession of a disputed fund, it ceases to exert that dominion over the money sufficient to justify an obligation to pay interest thereon . . . ." *Adams, supra* at 370. In this respect, the facts of this case are almost identical with *Adams*; under the authority of *Adams,* interest on the "sustainable" funds did terminate as above indicated.

As previously indicated, Phillips has pled in this case the defenses of waiver and novation. Neither of these defenses was available under the facts of the *Adams* case and the companion cases of *Phillips Petroleum Company v. Riverview Gas Compression Company,* 513 F.2d 374 (5th Cir. 1975), and *First National Bank of Borger v. Phillips Petroleum Company,* 513 F.2d 371 (5th Cir. 1975).

Although this court realizes that if the facts so warranted, these defenses are available and would be a bar against any recovery by the Fullers, the court does not find that the facts are sufficient to support these defenses.

■ For waiver to be available as a defense, it is well settled in Texas that the person waiving his rights must have knowledge of the material facts concerning the right or privilege involved. *See Loggins v. Gates,* 301 S.W.2d 525 (Tex. Civ.App.—Waco 1957, writ ref'd n. r. e.); *Pardee v. Universal Life Insurance Co.,* 170 S.W.2d 852 (Tex.Civ.App.—Waco 1943, no writ). Unless Phillips had the use of the "sustainable" moneys belonging to Fullers for its general corporate purposes, the Fullers would have no right to demand or expect to receive the payment of any interest. Up until October 1974 and at all times prior thereto, Mr. Fuller had been led to believe by Phillips' representatives that the money was being held in "escrow" or in "suspense" both of which indicate that it was earmarked, set aside, and not available for or used in the general corporate activities of Phillips. It was not until October of 1974 that Fullers learned to the contrary and Mr. Fuller testified that on that same day he demanded interest. The Fullers' lack of knowledge of the material fact that would entitle them to interest, that is the knowledge that the moneys were being used for Phillips' general corporate purposes, was withheld from Fullers by Phillips and in fact indications were given to Fullers that just the opposite was true. Consequently the defense of waiver is not available to Phillips.

[4, 5] As for the defense of novation, the general rule in Texas is that if one of the parties has acted in ignorance of the facts, even if this ignorance resulted from the innocent misstatement of the inducing party, then the requisite mutuality of consent required for novation is lacking. *Reclamation Co. v. Western Brokerage & Supply Co.,* 57 S.W.2d 274 (Tex.Civ.App.—Eastland 1933), *aff'd,* 127 Tex. 386, 93 S.W.2d 393 (1936, opinion

adopted); 41 Tex.Jur.2d *Novation* § 7 (1963). For this reason alone, and under the same reason as the court has used for the denial of the defense of waiver, novation would not be an available defense under these facts. But there are additional reasons for the court holding that there has been no novation in these circumstances. The court finds that there was no new contract between the parties which substituted for and extinguished the previous contract. *See Ridgleawood, Inc. v. White,* 380 S.W.2d 766 (Tex.Civ.App.—Waco 1964, no writ). The indemnity agreement in no way changed or altered the rights or the obligations of the parties with respect to the ownership of the "sustainable" moneys. These rights and obligations were determined solely by the final action of the FPC, and subsequent court approval, and the indemnity agreements did not alter this relationship. The only change was that the money would be in the custody of the Fullers rather than in the custody of Phillips until this final determination of the rights and obligations of the parties was made by the FPC. In fact, the indemnity agreements provide that the parties will be required either to make a refund or not to make such a refund dependent upon the FPC determination; this was the situation prior to the execution of the indemnity agreements. The actions of the parties and the indemnity agreements cannot be construed as a sufficiently new contract between Phillips and the Fullers to entitle Phillips to the defense of novation.

Accordingly, a judgment will be entered awarding the Fullers and requiring Phillips to pay to the Fullers interest in the sum of $56,738.19, which is the stipulated amount of interest on the "sustainable" moneys from the date of receipt of same by Phillips to the date of the respective indemnity agreements.

Finally, this court is of the opinion that the Fullers are entitled to recover interest on interest. The question of the propriety of granting interest on interest first received the attention of the Texas courts in 1849. The Supreme Court of Texas allowed interest on a judgment, the components of which were the principal and interest payments in arrears. *Frazier v. Campbell,* 5 Tex. 275 (1849). Some 41 years later the court concluded that interest which has accrued at the date of judgment should be treated as principal and should bear interest from the date of judgment. *Heidenheimer v. Johnson,* 76 Tex. 200, 13 S.W. 46 (1890). Similarly, the court subsequently concluded that if an obligor fails to pay interest when due, then interest is allowed on each interest payment in arrears. *Roane v. Ross,* 84 Tex. 46, 19 S.W. 339 (Tex. 1892). One year later the court of civil appeals allowed interest on principal and interest payments in arrears. *International & G. N. R. Co. v. Dimmitt County Pasture Co.,* 5 Tex.Civ.App. 186, 23 S.W. 754 (San Antonio 1893, no writ). The Texas law concerning interest on interest seems to have been clear at this point in time, as indicated by the court in *Crider v. San Antonio Real Estate Building & Loan Association,* 89 Tex. 597, 35 S.W. 1047 (Tex.1896):

> When the debt falls due the creditor is as much entitled to his interest as to his principal, and if the parties have elected in good faith to provide for the default, and to agree that after maturity the interest shall bear interest, it is a contract for interest upon the forbearance of a new obligation which has accrued, and not a contract for interest upon the original principal. *The principal is, in effect, recognized by this court in those cases in which we have held that an installment of interest past due becomes principal, and bears interest, without any express stipulation to that effect.* (Emphasis ours).

*Crider, supra,* at 1048. The above language subsequently was cited with approval by Justice Greenwood in *Bothwell v. Farmers' & Merchants' State Bank & Trust Co.,* 120 Tex. 1, 30 S.W.2d 289 (Tex. 1930). This court recognizes that these cases do not factually equal the facts shown in the Fuller-Phillips rela-

tionship. Some of the cited cases involve express promises of interest until the date of maturity, but Fullers only entitlement to interest is based upon equity. Also in some of these cases the question that concerned the Court was that of usury which is not involved here. But regardless of these differences the principle is the same—when interest becomes past due, it becomes a part of the principal, and bears interest from that date, without any express stipulation to that effect.

The problem with respect to compound interest has arisen in the current case because of *McDaniel v. Miller,* 317 S.W.2d 546 (Tex.Civ.App.—Waco 1958, no writ). The lower court had granted an award of interest on the unpaid principal and the unpaid interest. The court of civil appeals, however, concluded that this award of interest on interest was fundamental error, even though the court reached this conclusion without citing to a single authority. Subsequently, a federal district court concluded that *McDaniel* was the law in Texas, and it distinguished the *Frazier* case on the ground that it involved an instrument which specified what interest the principal was to bear rather than judicially imposed interest. *Brooklyn Union Gas Co. v. Transcontinental Gas Pipe Line Corp.,* 201 F.Supp. 679, 683–84 (S.D.Tex. 1960), *aff'd sub nomine, Socony Mobil Oil Co. v. Brooklyn Union Gas Co.,* 299 F.2d 692 (5th Cir.), *cert. denied,* 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121 (1962). The Fifth Circuit concluded that *McDaniel* was the authoritative Texas case once again without a basis for the conclusion other than the *McDaniel* case itself. It seems, however, that the recent Texas cases have rejected the *McDaniel* and *Brooklyn* cases as not being a correct statement of the law in Texas. *Lanpar Co. v. Stanfield,* 451 S.W.2d 254, 257 (Tex.Civ.App.—Dallas 1970, no writ); *American Savings & Loan Ass'n of Houston v. Jones,* 482 S.W.2d 62 (Tex. Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.); *State v. Brunson,* 461 S.W.2d 681 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.); and

*Ligon v. E. F. Hutton & Co.,* 428 S.W.2d 434 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Further, these cases would seem to be supported by sound reasoning. Interest represents nothing more than consideration paid by the debtor for the use of the creditor's money. When the interest is not paid, the debtor simply gains the use of that amount representing interest, and he should not be able to achieve such use without paying for it. As stated by the court in *Phillips Petroleum Company v. Adams, supra,* when referring to the equitable grounds for allowing interest on the principal in that case, Phillips should pay interest "not because Phillips has done anything wrong, but because Phillips ought not to be able to use someone else's money as it pleased for ten years, thereby enjoying a very considerable benefit, and then pay nothing for the use of the money." *Adams, supra,* at 368. This court is persuaded by the cases discussed and by the above reasoning that interest is allowed on unpaid interest in Texas. Because the interest in this case was not paid by Phillips when it paid the principal sum ("sustainable" moneys), such interest then became a part of the principal and, as above indicated, the Fullers are as much entitled to their interest as to their principal and they are entitled to interest upon interest even though there is not express stipulation to that effect.

The pre-trial order contains the contention of the Fullers that their "interest on interest" should commence as of October 28, 1972, the date the FPC order became final. Though it would appear that the interest on the sustainable orders became due on the date of the disbursements (shown in paragraph 45 of the pre-trial order) the Fullers have not pled for "interest on interest" prior to October 28, 1972 and they will be allowed such "interest on interest" from October 28, 1972 until the date of the judgment at 6 percent per annum. Further the total judgment will bear interest at 6 percent per annum from its date until paid.

The attorneys will confer and prepare the appropriate judgment in accordance with the above rulings, approve it as to form, and submit it to the court for signature.

Costs are assessed against the defendant.

### SECOND SUPPLEMENTAL MEMORANDUM

This second supplemental memorandum opinion supplements the Court's Memorandum Opinion filed and entered herein on February 20, 1976, in the following particulars, to wit:

■ On pages 6 and 7, Phillips' "waiver" defense was discussed. In addition to its contention that the acceptance of the principal constitutes a "waiver" of the plaintiffs' right to sue for interest, Phillips also contended that the plaintiffs are barred *as a matter of law*, from claiming interest by reason of their acceptance of the principal sums, pursuant to the aforementioned indemnity agreements, without reserving their right to later sue for interest. In support of this contention, Phillips relies on *Nueces Hotel Co. v. Ring*, 217 S.W. 255 (Tex.Civ. App.–San Antonio 1919, writ dism'd). There the court, referring to the holding in *United Bros. of Friendship v. Kennedy*, 193 S.W. 253 (Tex.Civ.App.–Texarkana 1917, no writ hist.), said:

It was held that acceptance of the principal on a contract not specifying interest was a bar to the recovery of interest. That was all that probably should have been held, or that was intended to be held. 217 S.W. at 256.

In the *Kennedy* case, *supra*, the court said:

\* \* \* The trial court found as a fact that appellees accepted the $500 paid to them May 10, 1916, as a 'full settlement for all claims' they had against appellant, but concluded that appellees, 'under the law of accord and satisfaction,' nevertheless were entitled to recover interest on the sum from the time it should have been paid to them. The law the court invoked, when applied to the facts of the case, did not authorize the conclusion he reached. Appellant's contract was to pay the $500. It did not contract to pay interest. Therefore, interest was recoverable only as damages. The rule applicable to such a case has been stated as follows:

Where there is no express contract or obligation to pay interest as well as principal, and the interest is recoverable only as damages for nonpayment of the principal when it is due, the receipt of the principal, as such, in full, is a bar to any claim for interest, because it is considered no part of the debt, but as a mere incident of the debt; and it is immaterial whether the debt be past due or running to maturity. It is likewise immaterial that the creditor received payment of the principal without interest under protest. This does not change the legal effect of his act. 1 C.J. 546; and see 1 Cyc. 325; 1 R.C.L. 189.

The judgment will be reversed, and judgment will be rendered here that appellees take nothing by their suit against appellant. 193 S.W. at 253.

After studying the *Ring* and *Kennedy* cases, this court has come to the conclusion that the rule therein stated is applicable only in cases involving interest *as damages* and is of no avail here. *See also, City of Texarkana v. Arkansas Louisiana Gas Company*, 118 F.2d 289 (5th Cir. 1941), *vacated per stipulation* 315 U.S. 780, 62 S.Ct. 579, 86 L.Ed. 1188 (1942) where, on rehearing, it was said:

The Gas Company did settle with numerous patrons before the issue about interest was pressed. It is earnestly argued that acceptance by these of the principal without claiming interest is a waiver of interest allowable *as damages*. Such is the general rule. 30 Am.Jur., Interest, § 12; *Stewart v. Barnes*, 153 U.S. 456, 14 S.Ct. 849, 38 L.Ed. 781; *Nelson v. Chicago Mill & Lumber Corp.*, 8 Cir., 76 F.2d 17, 100 A.L.R. 87; *United Brothers v. Kennedy*, Tex.Civ.App., 193 S.W. 253. This

issue was not presented in the court below, and the facts concerning it have not been developed. The matter is left open for consideration by the district court. 118 F.2d at 295 (Emphasis added).

Here we are not concerned with interest *as damages. Adams, supra,* 513 F.2d at 365.

Other than as specifically set forth above, and in the Supplemental Memorandum of February 24, 1976, there is no other change made in the previous Memorandum Opinion.